# EXHIBIT A

1 | Keith A. Meyer (SBN 106104)
Douglas C. Rawles (SBN 154791)
2 | Reed Smith LLP
355 South Grand Avenue
3 | Suite 2900
Los Angeles, CA 90071-1514
4 | Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080
5 |
Melissa A. Meth (SBN 263571)
6 | Reed Smith LLP
101 Second Street
7 | Suite 1800
San Francisco, CA 94105-3659
8 | Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269
9 |
Attorneys for Plaintiff
10 | SFA Group, LLC

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

MAY 0 2 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

11 |

12 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

13 | FOR THE COUNTY OF LOS ANGELES

14 |

15 | SFA Group, LLC,                          Case No.  BC 6 1 8 9 8 0

16 |                    Plaintiff,            COMPLAINT FOR: (1) BREACH OF
                                              CONTRACT; AND (2) BREACH OF THE
17 |         vs.                             IMPLIED COVENANT OF GOOD FAITH
                                              AND FAIR DEALING
18 | Certain Underwriters at Lloyd's, London; Certain
London Market Companies; and DOES 1 through
19 | 100; inclusive,

20 |                    Defendants.

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

*REED SMITH LLP*
*A limited liability partnership formed in the State of Delaware*

COMPLAINT

Plaintiff SFA Group, LLC ("Plaintiff"), by its undersigned counsel, hereby brings this action against Defendants Certain Underwriters at Lloyd's, London, Certain London Market Companies and Does 1 through 100, inclusive, and in support thereof, alleges as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage case arising out of a legal malpractice action styled *Manhattan Beachwear, LLC v. Hettrick Law, P.C., et al.*, Los Angeles Superior Court, Case No. BC 49750, in which Plaintiff's predecessor, Manhattan Beachwear, LLC ("MBW"), obtained a judgment against attorney Clyde Hettrick (the "Hettrick Malpractice Action"). Defendants provided legal malpractice insurance covering the wrongful acts alleged against Mr. Hettrick, but refused to defend or indemnify him in the Hettrick Malpractice Action. MBW obtained a judgment of nearly $64 million against Mr. Hettrick and his estate, but Defendants refused, and continue to refuse, to satisfy the judgment obtained against their insured. After judgment was entered in favor of MBW, Plaintiff was assigned all right, title and interest in the judgment. Through this action, Plaintiff seeks damages from Defendants for breach of their insurance policies.

### PARTIES

2.      Plaintiff is a Delaware limited liability company, with its principal place of business in Los Angeles, California, and authorized to do business in the State of California.

3.      Plaintiff is the assignee of MBW. MBW is a Delaware limited liability company, with its principal place of business in Las Vegas, Nevada, and authorized to do business in the State of California. From 2005-2010, MBW's principal place of business was Cypress, California.

4.      Defendants Certain Underwriters at Lloyd's, London ("Underwriters") and Certain London Market Companies ("London Market Companies") (collectively, "Defendants") are various individuals and corporations that subscribed to one or more insurance policies issued to the law firm of Dickstein Shapiro LLP ("Dickstein") to cover, *inter alia*, claims of legal malpractice made against Dickstein or any of its attorneys ("Dickstein's Insurance Program").

5.      Dickstein was a national law firm, with an office in Los Angeles. The lawyers working in Dickstein's Los Angeles office were residents of the State of California and were insured for alleged errors or omissions by Defendants' policies.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

6.      Certain Underwriters and London Market Companies have agreed through one or more of Defendants' policies that with respect to any suits involving the policies they "will submit to the jurisdiction of a Court of competent jurisdiction within the United States." To the extent any arbitration clauses in one or more of the Lloyd's policies purport to require the arbitration of disputes in London, England, any such requirement is unenforceable, because, *inter alia*, it is against California public policy and is both procedurally and substantively unconscionable.

7.      The true names and capacities of defendants sued herein as DOES 1-100, inclusive, are unknown to Plaintiff, which therefore sues said defendants by such fictitious names. These defendants are persons, corporations, partnerships, associations or other legal entities, who sold, brokered, syndicated, underwrote, or issued policies of insurance to Dickstein, or otherwise negotiated, handled, or adjusted claims asserted thereunder. Plaintiff will seek leave of Court to amend this Complaint when the true names and capacities of these defendants have been ascertained.

<u>JURISDICTION AND VENUE</u>

8.      Jurisdiction is proper in this Court pursuant to California Code of Civil Procedure 410.10 because the parties were licensed to do business and/or have done business in California.

9.      Venue is proper in this Court because the underlying errors and omissions took place in Los Angeles, the Hettrick Malpractice Action for which insurance coverage is being sought was filed in this Court, the judgment in the Hettrick Malpractice Action was issued by this Court, and Mr. Hettrick – the attorney whose conduct was insured under Defendants' policies – resided, worked and provided advice from this jurisdiction.

<u>FACTUAL BACKGROUND</u>

<u>The Policies</u>

10.     Dickstein's Insurance Program for the policy period December 20, 2012 to December 20, 2013, consisted of a primary layer policy and four layers of excess insurance policies (collectively, the "Policies"), for a total of $75 million in limits. The Policies are identified below by policy number, the policy limits of each policy and the corresponding syndicate or insurance company that subscribed to and/or issued each such policy. Attached as Exhibit A is what Plaintiff believes to be a true and correct copy of the Policies.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

| Policy Number | Policy Limit | Insurers/Percentage of Coverage |
|---|---|---|
| B0621PDIC00212 ("Primary Policy") | $15 million | Underwriters at Lloyd's<br>Brit (Lloyd's Syndicate 2987) (22.58%)<br>Beazley (Lloyd's Syndicate 2623) (18.52%)<br>Beazley (Lloyd's Syndicate 0623) (4.06%)<br>Faraday (Lloyd's Syndicate 0435) (6.78%)<br>Amlin (Lloyd's Syndicate 2001) (4.51%)<br>RenaissanceRe (Lloyd's Syndicate 1458) (4.52%)<br><br>London Market Companies<br>Lexington Insurance Co. ("Lexington") (9.03%)<br>Swiss Re International ("Swiss Re") (30%) |
| B0621PDIC00312 and B0621PDIC00312001 ("First Layer Excess Policy") | $15 million | Underwriters at Lloyd's<br>Beazley (Lloyd's Syndicate 2623) (12.05%)<br>Beazley (Lloyd's Syndicate 0623) (2.64%)<br>Brit (Lloyd's Syndicate 2987) (5.87%)<br>Faraday (Lloyd's Syndicate 0435) (4.41%)<br>Amlin (Lloyd's Syndicate 2001) (5.87%)<br>RenaissanceRe (Lloyd's Syndicate 1458) (3.91%)<br><br>London Market Companies<br>Lexington (5.87%)<br>Swiss Re (30%)<br>Scottsdale Insurance Co. (29.38%) |
| B0621PDIC01012 and B0621PDIC01012001 ("Second Layer Excess Policy") | $20 million | London Market Companies<br>Liberty Mutual Insurance Europe (37.5%)<br>Hannover Ltd. (12.5%)<br>Swiss Re (25%)<br>Allied World Assurance Co. (25%) |
| B0621PDIC00512 ("Third Excess Layer Policy") | $10 million | London Market Companies<br>Ironshore Specialty Ins. Co. (100%) |
| B0621PDIC00612 ("Fourth Excess Layer Policy") | $15 million | London Market Companies<br>Argo Re Ltd. (100%) |

11.    The Primary Policy obligates the Underwriters and/or insurers that subscribed thereto to defend and indemnify any Assured for, *inter alia,* third-party claims alleging errors and omissions by any Assured.  The Excess Layer Policies generally follow form to the Primary Policy, meaning

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

they incorporate the terms and conditions of the Primary Policy (other than policy limits) and provide the same scope of coverage as the Primary Policy.

12.     The Policies cover claims for legal malpractice made against partners working at Dickstein.  In the event of the death of any insured partner, the Policies provide coverage to the estates, heirs, spouses, assigns and legal representatives of any such deceased partner for legal malpractice claims.  In addition, each of the Policies expressly, or by incorporation, permits a judgment creditor, or its legal representative, to make a claim for coverage thereunder.

13.     Clyde Hettrick was a partner at Dickstein in its Los Angeles office from at least January 20, 2008 through June 15, 2008.  As a Dickstein partner, he was insured under each of the Policies.

**Indonesian Insurance Claim**

14.     From 2005-2010, MBW was in the business of designing, manufacturing, and marketing women's swimwear.  In July 2007, MBW suffered losses from theft and fire at a manufacturing plant in Indonesia.  MBW had business insurance coverage through Lloyd's of London ("Lloyd's") to cover the loss due to the thefts and fire.  On or about January 20, 2008, MBW engaged Dickstein, to pursue insurance for the losses.  Mr. Hettrick was the partner in charge of this engagement.

15.     On or about February 26, 2008, Dickstein, by and through Mr. Hettrick, submitted a claim under MBW's business insurance policies for losses arising out of the July 2007 thefts and fire at the plant in Indonesia.  At the same time, Dickstein, by and through Mr. Hettrick, also submitted a claim for a different, earlier loss that had occurred in May 2007 and arose out of the thefts of a number of truckloads of MBW merchandise.  The May and July losses reported to Lloyd's collectively comprise the "Indonesian Insurance Claim."

16.     For more than a year, Lloyd's investigated the Indonesian Insurance Claim without taking a position on coverage.

17.     On or about June 15, 2008, Mr. Hettrick left Dickstein and formed his own firm, Hettrick Law P.C. ("Hettrick Law").  Thereafter, MBW discontinued using Dickstein and engaged Hettrick Law to continue to represent it in connection with the Indonesian Insurance Claim.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**The Business Insurance Litigation**

18.     On January 29, 2009, Hettrick Law filed a lawsuit in the Los Angeles Superior Court on behalf of MBW against Lloyd's seeking recovery for the Indonesian Insurance Claim under MBW's business insurance policies (the "Business Insurance Litigation").

19.     On July 8, 2009, Lloyd's formally denied coverage for the Indonesian Insurance Claim.

20.     The Business Insurance Litigation against Lloyd's continued throughout 2010 and 2011. During that time, Hettrick Law's representation of MBW fell below the standard of care for similarly situated attorneys.

21.     On or about June 16, 2011, MBW terminated its engagement of Hettrick Law and re-hired Dickstein to pursue insurance coverage for the Indonesian Insurance Claim and take over its representation in the Business Insurance Litigation.

22.     On or about June 11, 2012, the court in the Business Insurance Litigation granted summary judgment in favor of Lloyd's and held there was no insurance coverage under the Lloyd's Policies for the Indonesian Insurance Claim.

23.     In late 2012, MBW and Lloyd's settled the Business Insurance Litigation.

**Hettrick Malpractice Action**

24.     On or about June 8, 2012, MBW and Hettrick Law and Mr. Hettrick entered into a tolling agreement regarding MBW's potential legal malpractice claim against Hettrick Law arising from the conduct of Mr. Hettrick's during the Business Insurance Litigation. The tolling agreement was effective from June 13, 2012 to December 15, 2012.

25.     Hettrick Law and Mr. Hettrick were insured for professional negligence by Hanover Insurance Group ("Hanover"). On information and belief, Hanover was notified of MBW's potential claim that Hettrick Law did not competently perform legal services in connection with the Business Insurance Litigation.

26.     On December 14, 2012, one day before the tolling agreement between Hettrick Law and MBW was set to expire, MBW filed the Hettrick Malpractice Action in the Los Angeles Superior Court.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

27.     In the Hettrick Malpractice Action, MBW alleged that Hettrick Law failed to represent MBW competently in the Business Insurance Litigation.  The complaint in the Hettrick Malpractice Action alleged that all of the conduct giving rise to the malpractice claim was committed by Mr. Hettrick while at Hettrick Law.  It did not name Dickstein as a defendant or mention any Dickstein attorneys.

28.     On information and belief, Mr. Hettrick first became aware of the Hettrick Malpractice Action at some point after December 20, 2012. On information and belief, Mr. Hettrick had no knowledge prior to December 20, 2012 that MBW considered his pre-suit handling of the Indonesian Insurance Claim to have been performed negligently.

**Notice to Defendants of the Hettrick Malpractice Action**

29.     On information and belief, on March 3, 2013, Andrew Waxler, who had been engaged by Hanover (Hettrick Law's malpractice carrier) to represent Hettrick Law and Mr. Hettrick, informed Dickstein's general counsel of the Hettrick Malpractice Action and demanded that Dickstein and its malpractice insurer afford coverage to Mr. Hettrick for the lawsuit.  On information and belief, Dickstein provided notice to Defendants of the Hettrick Malpractice Action on May 14, 2013.  Mr. Hettrick was served with the complaint in the Hettrick Malpractice Action on May 16, 2013.

30.     On August 1, 2013, "certain interested Underwriters at Lloyd's, London" which subscribed to the Primary Policy sent a letter to Dickstein denying coverage for the Hettrick Malpractice Action.  This denial of coverage was unreasonable, without proper cause, and in breach of the terms of the Policies.

**Resolution of the Hettrick Malpractice Action**

31.     On October 16, 2013, Mr. Hettrick died unexpectedly in an accident.  MBW continued to pursue the Hettrick Malpractice Action against his estate.  His estate also continued to pursue counterclaims that Mr. Hettrick had asserted against MBW for alleged failure to pay fees in an unrelated action.

32.     On April 23, 2015, MBW, Hettrick Law and Mr. Hettrick's estate entered into a settlement agreement to resolve the Hettrick Malpractice Action.  The parties agreed that the trial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   court would determine Mr. Hettrick's liability and the amount of damages suffered by MBW as a

2   result of Mr. Hettrick's malpractice. In addition, MBW was assigned the right to pursue any and all

3   insurance claims under Defendants' policies arising from the Hettrick Malpractice Action.

4        33.    On June 3 and 4, 2015, the Honorable Elizabeth Allen White, Judge of the Los

5   Angeles Superior Court, held a two-day bench trial regarding Mr. Hettrick's malpractice and the

6   amount of damages suffered by MBW.

7        34.    On August 10, 2015, Judge White issued a Statement of Decision in the Hettrick

8   Malpractice Action. She found that Mr. Hettrick had committed malpractice in connection with both

9   the Indonesian Insurance Claim and the Business Insurance Litigation. Judge White concluded that

10  Mr. Hettrick's negligence in handling the Indonesian Insurance Claim resulted in the denial of the

11  claim and the rescission of the Lloyd's policies. Judge White also found that Mr. Hettrick

12  negligently allowed potential claims against MBW's broker to expire and held that his conduct

13  during the Business Insurance Litigation, including the failure to attend depositions of critical

14  witnesses, was egregious and fell below the standard of care for similarly situated lawyers. Judge

15  White determined that as a result of Mr. Hettrick's negligence, MBW had suffered direct and

16  consequential losses in the amount of $63,888,486.49.

17       35.    Judgment was thereafter entered against Mr. Hettrick's estate and Mr. Hettrick's wife

18  (as the personal representative of Mr. Hettrick) in the amount of $63,888,486.49. This judgment is

19  covered under the Policies. Nevertheless, Defendants refused, and continue to refuse, to pay the

20  amount of the judgment in the Hettrick Malpractice Action.

21       36.    On or around January 1, 2016, MBW assigned its right, title and interest in the

22  Hettrick Malpractice Action judgment to SFA.

23                              **FIRST CAUSE OF ACTION**

24                                  **(Breach of Contract)**

25       37.    Plaintiff hereby incorporates by reference paragraphs 1-36 as if fully set forth herein.

26       38.    The Hettrick Malpractice Action is a claim that is covered under Defendants'

27  Policies. As a result, the Defendants were obligated to defend and indemnify Mr. Hettrick and his

28  estate against the Hettrick Malpractice Action.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

39.     Defendants, and each of them, have breached their respective contracts of insurance issued to Dickstein by refusing to perform their duty to defend and duty to indemnify Plaintiff, as the assignee of the insurance benefits to which Mr. Hettrick and/or his estate was entitled, and as the assignee of a judgement creditor, with respect to the Hettrick Malpractice Action.

40.     Dickstein and/or Mr. Hettrick complied with all of the terms and conditions of the Policies and performed all other required conditions and obligations under the Policies, including the payment of premiums and timely notice, except as to that performance which has been excused, waived or prevented by the representations, acts or omissions of Defendants.  Accordingly, Plaintiff is entitled to the full benefit of the insurance provided by the Policies.

41.     As a direct and proximate result of the conduct of the Defendants, and each of them, Mr. Hettrick and his estate were deprived of the benefit of the insurance coverage for which premiums were paid.  This conduct led to a settlement of the Hettrick Malpractice Action, and after a trial, a judgment was entered against Mr. Hettrick's estate and personal representative for approximately $64 million, which amount remains unpaid and accruing interest.  Plaintiff, as the ultimate assignee and/or judgment creditor of Mr. Hettrick, has the right, title and interest to collect all damages proximately caused by Defendants' breaches, and has a direct right to bring an action against Defendants to recover insurance benefits under the terms of the Policies.

42.     As a direct and proximate result of the conduct of the Defendants, and each of them, Plaintiff has sustained additional damages, plus interest, in an amount to be shown by proof at trial.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

43.     Plaintiff hereby incorporates by reference paragraphs 1-42 as if fully set forth herein.

44.     Each of the Policies contains an implied covenant of good faith and fair dealing that the insurer will not do anything which will injure the right of an insured to receive the benefits of said Policies.  Here, the implied covenant imposes a duty on each Defendant not to withhold payment of damages which its insured has become obligated to pay by judgment.

45.     Having secured a final judgment in the Hettrick Malpractice Action, MBW was a third-party beneficiary of Defendants' policies and was entitled to recover the amount of the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  judgment thereunder.  Plaintiff has succeeded to all rights possessed by MBW as a judgment

2  creditor.

3       46.    Under the settlement agreement in the Hettrick Malpractice Action, Mr. Hettrick's

4  estate assigned all claims for breach of the implied covenant of good faith and fair dealing under

5  Defendants' policies to MBW.  Plaintiff has succeeded to all such rights possessed by MBW.

6       47.    Defendants were obligated to defend and/or indemnify Mr. Hettrick in connection

7  with the Hettrick Malpractice Action pursuant to the terms of the Policies but unreasonably refused

8  to do so.  As a result, Defendants breached their express and implied obligations owed to Mr.

9  Hettrick.

10       48.    Defendants owe Plaintiff a duty of good faith and fair dealing not to withhold in bad

11  faith payment of damages which Mr. Hettrick's estate became obligated by judgment to pay.

12       49.    Defendants, and each of them, breached their duty of good faith and fair dealing owed

13  to Plaintiff under its policies by withholding payment of the judgment in the Hettrick Malpractice

14  Action.

15       50.    In addition, Defendants, and each of them, breached their duty of good faith and fair

16  dealing owed to Plaintiff under its policies in the following respects, among others:

17          a.   Failing to conduct an objective and reasonably thorough investigation prior to

18              denying coverage for the Hettrick Malpractice Action;

19          b.   Failing to provide a reasonable explanation of the basis for its denial of coverage;

20          c.   Failing in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's

21              claims for coverage;

22          d.   Placing their own commercial interests ahead of those of Plaintiff;

23          e.   Compelling Plaintiff to institute litigation to recover amounts due under the Policies;

24              and

25          f.   Resisting coverage for the Hettrick Malpractice Action not because of any legitimate

26              coverage defense, but rather to retain the use of funds owed to Plaintiff for as long as

27              possible and to exert economic pressure on Plaintiff to accede to their improper

28              demands.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    51.    As a direct and proximate result of Defendants' breach of the implied covenant of

2    good faith and fair dealing, Plaintiff has suffered actual and consequential damages and out-of-

3    pocket expenses, including attorney's fees and costs, and other foreseeable economic losses, all to

4    Plaintiff's damage in a total amount to be shown by proof at the time of trial.

5    52.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985) and *Essex*

6    *Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252 (2006), Plaintiff is entitled to recover and any

7    all attorney's fees that it reasonably incurs in its efforts to obtain policy benefits that have been

8    wrongfully withheld by Defendants.

9    <u>**PRAYER FOR RELIEF**</u>

10   WHEREFORE, Counterclaimants pray that the Court enter judgment against Defendants as

11   follows:

12   <u>**ON THE FIRST CAUSE OF ACTION:**</u>

13   1.    For actual damages in an amount to be shown by proof at trial against Defendants,

14   and each of them, including without limitation the amount of the judgment entered in the Hettrick

15   Malpractice Action; and

16   2.    For consequential damages against Defendants, and each of them, according to proof

17   at trial.

18   <u>**ON TO THE SECOND CAUSE OF ACTION:**</u>

19   1.    For actual damages in an amount to be determined at the time of trial against

20   Defendants, and each of them, plus interest;

21   2.    For consequential damages against Defendants, and each of them, according to proof

22   at trial, plus interest;

23   3.    For reasonable attorney's fees incurred by Plaintiff and its predecessors in their

24   efforts to obtain policy benefits wrongfully withheld by Defendants, and each of them.

25   <u>**ON ALL CAUSES OF ACTION:**</u>

26   1.    For reasonable attorney's fees and expenses incurred herein;

27   2.    For costs of suit incurred herein;

28   3.    For prejudgment and post-judgment interest; and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

4.      For such other and further relief as the Court deems appropriate.


DATED:  May 2, 2016

                                        REED SMITH LLP


                                        By: _____
                                            Keith A. Meyer
                                            Douglas C. Rawles
                                            Melissa A. Meth
                                            Attorneys for Plaintiff
                                            SFA Group, LLC

# EXHIBIT A



Miller Insurance Services LLP
Dawson House
5 Jewry Street
London
EC3N 2PJ

Telephone    +44 (0) 20 7488 2345
Fax          +44 (0) 20 7702 3555
Email        info@miller-insurance.com

www.miller-insurance.com

Copyright 2012 Miller Insurance Services LLP

Miller Insurance Services LLP is a limited liability partnership registered in England and Wales; Registered Number: OC301468;
Registered Office: Dawson House, 5 Jewry Street, London EC3N 2PJ. Authorised and regulated by the Financial Services Authority.





www.miller-insurance.com

# Dickstein Shapiro LLP

Lawyers

Primary layer and excess layers

20th December 2012 to 20th December 2013



**Summary of cover**                                    www.medinsurance.com

| B0621PDIC00212 | Primary layer | |
|---|---|---|
| Limit of Liability: | USD 15,000,000 | each and every Claim and in the aggregate including Claims Expenses, plus one reinstatement (round the clock basis) as per Policy wording. |
| Deductible: | USD 1,000,000 | each Claim deductible including Claims Expenses. |
| | USD 2,000,000 | in the aggregate, including Claims Expenses. |
| | USD 250,000 | each and every Claim, including Claims Expenses, to apply in the event of the exhaustion of the aggregate deductible amount. |

| B0621PDIC00312 | First excess layer | |
|---|---|---|
| Amount of Liability: | USD 15,000,000 | each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |

| B0621PDIC01012 | Second excess layer | |
|---|---|---|
| Amount of Liability: | USD 20,000,000 | each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |

| B0621PDIC00512 | Third excess layer | |
|---|---|---|
| Amount of Liability: | USD 10,000,000 | each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |

| B0621PDIC00612 | Fourth excess layer | |
|---|---|---|
| Amount of Liability: | USD 15,000,000 | each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |



Summary of cover                                            www.miller-insurance.com

### Total liability limit placed

USD 75,000,000    each and every Claim and in the aggregate including
                  Claims Expenses, plus one reinstatement (round the clock
                  basis) as per Policy wording.

Signed on behalf of Miller Insurance Services LLP

Miller insurance document: B0621PDIC00212 Primary layer

## DECLARATIONS SCHEDULE

Attaching to and forming part of
LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY NUMBER: B0621PDIC00212

This Insurance is effected with certain
Underwriters at Lloyd's, London (not incorporated) and Insurance Companies

*THIS IS A CLAIMS MADE PROFESSIONAL LIABILITY INSURANCE POLICY*

PLEASE READ CAREFULLY

| | | |
|---|---|---|
| 1. | NAMED ASSURED: | Dickstein Shapiro LLP |
| | ADDRESS: | 1825 Eye Street NW<br>Washington<br>DC 20006 |
| 2. | PERIOD OF INSURANCE: | From: 20th December 2012 To: 20th December 2013<br>Both days at 12.01 am, local standard time at the address of the<br>Named Assured |
| 3. | LIMIT OF LIABILITY: | USD 15,000,000   each and every Claim and in the aggregate<br>including Claims Expenses, plus one reinstatement<br>(round the clock basis) as per policy wording. |
| 4. | DEDUCTIBLE: | USD 1,000,000   each Claim deductible including Claims Expenses |
| | | USD 2,000,000   in the aggregate, including Claims Expenses |
| | | USD 250,000   each and every Claim, including Claims Expenses,<br>to apply in the event of the exhaustion of the<br>aggregate deductible amount |
| 5. | PREMIUM: | |
| 6. | RETROACTIVE<br>DATE: | As per retroactive dates contained in Endorsements 2 and 5, attached<br>herein. |
| 7. | NOTICE OF CLAIM: | M. Furman of Furman Kornfeld & Brennan LLP<br>61 Broadway,<br>28th Floor,<br>New York<br>New York 10006<br><br>And |



Miller insurance document: B0621PDIC00212 Primary layer

Miller Insurance Services LLP
Dawson House
5 Jewry Street
London
EC3N 2PJ

8.    SERVICE OF SUIT           McCullough, Campbell & Lane LLP
                                205 North Michigan Avenue
                                Suite 4100
                                Chicago
                                Illinois 60601-5925

9.    NOTICE OF ELECTION        Miller Insurance Services LLP
                                Dawson House
                                5 Jewry Street
                                London
                                EC3N 2PJ

10.   DATE OF APPLICATION:      12th November 2012

Miller Insurance document B0621PDIC00212 Primary layer

## PRIMARY LAWYERS

### PROFESSIONAL LIABILITY INSURANCE

**NOTICE:** This is a Claims made form. Except to such extent as may otherwise be provided herein, the coverage afforded under this Insurance Policy is limited to liability for only those Claims that are first made against the Assured and reported to the Underwriters while the insurance is in force. The Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the deductible. Please review the coverage afforded under this Insurance Policy carefully and discuss the coverage hereunder with your insurance agent or broker.

The Underwriters agree with the Assured, named in the Declarations made a part hereof, in consideration of the payment of the premium and reliance upon the statements in the application which is made a part of this Insurance Policy (hereinafter "Policy" or "insurance") and subject to the Limit of Liability, exclusions, conditions and other terms of this insurance.

**I.  INSURING AGREEMENTS**

    **A.  Coverage**

To pay on behalf of the Assured, Damages and Claims Expenses which the Assured shall become legally obligated to pay because of any Claim or Claims, including Claim(s) for Personal Injury as hereafter defined first made against the Assured and reported to the Underwriters during the Period of Insurance or Extended Reporting Period, arising out of any act, error or omission of the Assured, or of any person for whose acts, errors or omissions the Assured is legally responsible, in rendering or failing to render professional services for others arising out of the conduct of the Assureds profession as lawyer, mediator, arbitrator, fiduciary, notary public or lobbyist.

    **B.  Defense and Settlement (Included in the Limit of Liability)**

    **1.** The Underwriters shall have the right and duty to defend, subject to the Limits of Liability, any Claim against the Assured seeking Damages which are payable under the terms of this insurance, even if any of the allegations of the Claim are groundless, false or fraudulent. The Assured shall have the right to retain qualified outside counsel to represent them in the defense or appeal of a Claim, with the prior consent of Underwriters such consent not to be unreasonably withheld. It shall not be unreasonable for Underwriters to withhold their consent to the representation of any Assured by another Assured or, if more than one Assured is involved in a Claim, to withhold their consent to separate counsel for one or more for such Assureds unless there is a material, actual, or potential conflict of interest among such Assureds.

    **2.** It is agreed that the Limit of Liability available to pay Damages shall be reduced and may be completely exhausted by payment of Claims Expenses. Damages and Claims Expenses shall be applied against the deductible.

    **3.** The Underwriters shall have the right to make any investigation they deem necessary, including, without limitation, any investigation with respect to the application and statements made in the application and, with respect to coverage.

Miller insurance document: B0621PDIC00212 Primary layer

4.  If the Assured shall refuse to consent to any settlement or compromise recommended by the Underwriters and acceptable to the claimant and elects to contest the Claim, Underwriters' liability for any Damages and Claims Expenses shall not exceed the amount for which the Claim could have been settled plus the Claims Expenses incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and the Underwriters shall have the right to withdraw from further defense thereof by tendering control of said defense to the Assured.

5.  It is further provided that the Underwriters shall not be obligated to pay any Damages or Claims Expenses, or to undertake or continue defense of any suit or proceeding after the applicable limit of the Underwriters' liability has been exhausted by payment of Damages or Claims Expenses or after deposit of the applicable policy limit in a court of competent jurisdiction, and that upon such payment, the Underwriters shall have the right to withdraw from the further defense thereof by tendering control of said defense to the Assured.

## II.  Definition of Assured

Each of the following is an Assured under this Insurance to the extent set forth below:

(a)  If the Named Assured designated in Item 1 of the Declarations is an Individual, the person so designated but only with respect to the conduct of a law practice of which the individual is the sole proprietor;

(b)  If the Named Assured designated in Item 1 of the Declarations is a partnership, the partnership so designated and any lawyers who are partners thereof including any incorporated partners and their shareholders but solely for acts on behalf of the Named Assured designated in Item 1 of the Declarations;

(c)  If the Named Assured designated in Item 1 of the Declarations is a Professional Corporation or Professional Association the Professional Corporation or Professional Association so designated and any lawyers who are stockholders or members thereof but solely for acts on behalf of such Named Assured;

(d)  any lawyers acting as "of counsel", but solely for acts on behalf of the Named Assured designated in Item 1 of the Declarations;

(e)  any employed lawyer, Senior Advisor, other employees who are registered as lobbyists under the Federal Lobbying Disclosure Act, Political Advisor, or other employee but solely for acts on behalf of the Named Assured designated in Item 1 of the Declarations;

(f)  any person who previously qualified as an Assured under (b), (c), (d) or (e) above, prior to the termination of the required relationship with the Named Assured, but solely for acts on behalf of the Named Assured designated in Item 1 of the Declarations;

(g)  any partnership, Professional Corporation or Professional Association, advised in writing to the Underwriters, of which the Named Assured is the successor;

(h)  any lawyer who during the Period of Insurance becomes a partner, member, stockholder or employee of the Named Assured but solely for acts on behalf of the Named Assured designated in Item 1 of the Declarations;

Miller Insurance document: B0621PDIC00212 Primary layer

(i)     the estate, heirs, spouse, domestic partner, executors, administrators, assigns, and legal representatives of any Assured in the event of such Assured's death, incapacity, insolvency or bankruptcy, but only to the extent that such Assured would otherwise be provided coverage under this Insurance;

(j)     any Contract Lawyer but solely for the acts on behalf of the Named Assured designated in Item 1 of the Declarations.

### III.    Territory

This Insurance applies to acts, errors or omissions which take place anywhere in the world provided that Claim is first made against the Assured during the Period of Insurance or Extended Reporting Period when purchased in accordance with Clause IX.

### IV.    Exclusions

The coverage under this Insurance does not apply to Damages or Claims Expenses incurred with respect:

(a)     to any Claim arising out of any judgment or final adjudication based on any criminal, dishonest, fraudulent or malicious act, error or omission of any Assured, committed with actual, criminal, dishonest, fraudulent or malicious purpose or intent. However, notwithstanding the foregoing, the Insurance afforded by this Policy shall apply to Claims Expenses incurred in defending any such Claim or circumstance which might lead to a Claim, but shall not apply to any Damages which the Assured might become legally obligated to pay;

(b)     to the extent it is uninsurable by law the coverage under this Insurance does not apply to punitive or exemplary damages, fines, penalties, sanctions or any damages which are a multiple of compensatory damages, except that if a suit shall have been brought against the Assured for a Claim falling within the coverage hereof, seeking both compensatory and either punitive or exemplary damages, fines, penalties, sanctions or damages which are a multiple of compensatory damages, then the Underwriters will afford a defence to such action, without liability, however, for such punitive or exemplary damages, fines, penalties, sanctions or damages which are a multiple of compensatory damages;

In any applicable jurisdiction that allows the insurability of punitive or exemplary damages the coverage provided under this Insurance will be that which is most favourable to the Assured provided that such jurisdiction:

(i)     is where such punitive damages were awarded or imposed, or

(ii)     is where the act, error or omission occurred for which such punitive damages were awarded or imposed, or

(iii)     is where any Assured that is a corporation, limited liability company, partnership or other organisation or association, is incorporated or otherwise organised or has a principal place of business;

Miller insurance document. B0621PDIC00212 Primary layer

(c)   to any Claim by one Assured under this Insurance against another Assured under this Insurance except where such Claim arises solely in respect of legal services rendered by the Assured to the claimant, the rendering of which Legal Services was, prior to being commenced approved by the New Business Committee or Executive Committee of the Assured;

(d)   to any Claim for bodily injury to, or sickness, disease or death of any person, or to injury to or destruction of any tangible property, including the loss of use thereof. This exclusion shall not, however, apply to Claims brought against the Assured arising out of the provision of professional services for others in the Assured's capacity as a lawyer, mediator, arbitrator, fiduciary, notary public or lobbyist;

(e)   to any loss sustained by an Assured as a beneficiary or distributee of any trust or estate;

(f)   to any Claim arising out of any Assured's activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the Named Assured;

(g)   to any Claim made by or against or in connection with any business enterprise (including the ownership, maintenance or care of any property in connection therewith), not named in Item 1 of the Declarations, which is owned by any Assured or in which any Assured is a trustee, partner or employee (except where he or she is an employee solely by virtue of having been retained to perform legal services), which is directly or indirectly controlled, operated or managed by any Assured in a non-fiduciary capacity.

Ownership Interest as used in this Exclusion (g) shall be deemed to mean 5% or more of the issued and outstanding voting stock of any business enterprise which is publicly traded or 10% or more of the ownership of any other business enterprise which is not publicly traded;

(h)   to any Claim arising out of any acts, errors or omissions which took place prior to the effective date of this Insurance, if any Assured on the effective date knew or could have reasonably foreseen that such acts, errors or omissions might be expected to be the basis of a Claim;

(i)   to any Claim arising out of any Assured's capacity as an elected public official or as an employee of a governmental body, subdivision or agency thereof unless the Assured is deemed an employee solely by virtue of rendering legal services to such governmental body, the remuneration for which services inures to the benefit of the Named Assured;

(j)   to any Claim arising out of the Assured's activities and/or capacity as a Fiduciary under the Employee Retirement Income Security Act of 1974 and its amendment or any regulation or order issued pursuant thereto, except if the Assured is deemed to be a Fiduciary solely by reason of legal advice rendered with respect to any employee benefit plan;

(k)   to any Claim or circumstance which might lead to a Claim in respect of which any Assured has given notice to the Insurer of any other policy in force previous to the effective date of this Policy;

Miller insurance document: 50621PDIC00212 Primary layer

    (I)    to any Claim seeking the return or reimbursement of legal fees, costs or expenses paid to the Assured unless such Claim also alleges an act, error or omission of the Assured in rendering or failing to render professional services for others in the Assured's capacity as a lawyer, mediator, arbitrator, fiduciary, notary public or lobbyist, except that any coverage which may then be provided under this Insurance shall only apply to any Damages or Claims Expenses incurred, and shall not apply to the return or reimbursement of such legal fees, costs or expenses paid to the Assured.

If a retroactive date is applicable to this coverage it will appear at Item 6 of the Declarations and the following exclusion shall apply:

    (I)    to any Claim or circumstance that might lead to a Claim arising out of any act, error or omission prior to the retroactive date as set forth in Item 6 of the Declarations.

## V.    Conditions

Definitions:    Wherever used in this Policy:

**A.**    "Personal Injury" means:

    (1)    false arrest, detention or imprisonment, wrongful entry or eviction or other invasion of the right of occupance, or malicious prosecution;

    (2)    libel or slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right to privacy.

**B.**    "Claims Expenses" means:

    (1)    fees charged by an attorney designated in accordance with Insuring Agreement B.1.; and

    (2)    all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, suit or proceeding arising in connection therewith, if incurred by the Underwriters, or by the Assured with the written consent of the Underwriters;

    (3)    Claims Expenses does not include any salary, overhead or other charges by the Assured for any time spent in cooperating in the defense and investigation of any Claim or circumstance which might lead to a Claim notified under this Insurance.

**C.**    "Period of Insurance" means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of this Insurance and specifically excludes any Extended Reporting Period hereunder.

**D.**    "Policy Year" means the period from inception date of this Policy to expiration of the Period of Insurance.

Miller Insurance document: B0621PDIC00212 Primary layer

E.    "Extended Reporting Period", if applicable, means the 12 month period of time after the end of the Period of Insurance for reporting Claims arising out of acts, errors or omissions which take place prior to the end of the Period of Insurance and otherwise covered by this Insurance.

F.    "Claim" means a demand received by any Assured for money or services including the service of suit or institution or arbitration proceedings against the Assured.

G.    "Fiduciary" except as set forth in Clause IV(j), means an Assureds capacity as an administrator, conservator, executor, guardian, trustee, receiver, escrow agent or any similar capacity.

H.    "Damages" means a monetary judgement, award or settlement.

Whenever the singular form of a word is used herein, the same shall include the plural when required by context.

**VI.   Limit of Liability**

The Limit of Liability of Underwriters shall not exceed the sum stated in Item 3 of the Declarations for all Claims made against the Assured during the Policy year, including Claims Expenses incurred in connection with any Claims, arising out of the same, related or continuing professional services without regard to the number of Assureds, Claims or claimants, subject to the terms, conditions, exclusions and limitations of this Policy.

In the event that the Limit of Liability, as well as the excess limits amount of USD 60,000,000 are fully exhausted then the Limit of Liability will be reinstated, and the reinstated limits shall be subject to the same terms, conditions and limitations of this Policy. The reinstatement shall occur only once after the exhaustion of the USD 60,000,000 of excess insurance and Underwriters' maximum liability under the Policy for all Claims, including any reinstatement shall be limited to an aggregate amount equal to twice the Limit of Liability.

Notwithstanding the foregoing, Underwriters' liability under this Policy, including any reinstatement with respect to any one Claim shall be limited to an amount equal to the Limit of Liability.

All Claims from the same act, error or omission or series of interrelated acts, errors or omissions shall constitute a single Claim and a maximum of one Limit of Liability is applicable to the total amount of such Claim.

The reinstated Limit of Liability will apply on exhaustion of the USD 60,000,000 of excess insurance, regardless of whether such amount is collectible.

In the event of a Claim arising which may involve the coverage afforded by the reinstated limit, no Claims Expenses or liabilities shall be incurred, assumed, or agreed without the Underwriters' prior consent.

The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limits of Liability of the Underwriters for the Period of Insurance.

Miller insurance document: B0621PDIC00212 Primary layer

**VII.   Deductible**

The deductible amount stated in the Declarations, shall be satisfied by payments by the Assured of Damages and Claims Expenses resulting from all Claims first made and reported to the Underwriters during the Period of Insurance and the Extended Reporting Period as a condition precedent to the payment by the Underwriters of any amounts hereunder and the Underwriters shall be liable only for amounts in excess of such Deductible subject to Underwriters' total liability not exceeding the limit set forth in Item 3 of the Declarations. The Assured shall make direct payments within the deductible to appropriate other parties designated by the Underwriters.

**VIII.   Innocent Assured**

    **A.**    Whenever coverage under this insurance would be excluded, suspended or lost:

        (1)    because of any exclusion relating to any judgment or final adjudication based upon or arising out of any criminal, dishonest, fraudulent or malicious acts, errors or omissions by any Assured, and with respect to which any other Assured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, or

        (2)    because of non-compliance with any condition relating to the giving of notice to the Underwriters with respect to which any other Assured shall be in default solely because of the failure to give such notice or concealment of such failure by one or more Assureds responsible for the loss or damage otherwise insured hereunder,

the Underwriters agree that such insurance as would otherwise be afforded under this Policy shall cover and be paid with respect to those Assureds who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of (a) one or more of the acts, errors or omissions described in any such exclusion; or (b) such failure to give notice, provided that if the condition be one with which such Assured can comply, after receiving knowledge thereof, the Assured entitled to the benefit of Clause VIII shall comply with such condition promptly after obtaining knowledge of the failure of any other Assured to comply therewith.

    **B.**    With respect to this provision, the Underwriters' obligation to pay in such event shall be in excess of the deductible and in excess of the full extent of any assets of any Assured in the firm to whom the exclusion applies. In no event shall the Underwriters' obligation to pay exceed the Limit of Liability stated in Item 3 of the Declarations.

**IX.   Extended Reporting Period**

    **A.**    In the event of non-renewal of this Insurance by Underwriters or the Assured, the Named Assured designated in Item 1 of the Declarations shall have the right, upon payment in full and not proportionally or otherwise in part of 125% of the Annual Premium set forth in Item 5 of the Declarations to have issued an endorsement providing a 12 month Extended Reporting Period for Claims first made against any Assured and reported to the Underwriters during the Extended Reporting Period, subject to the conditions set forth in the definition of Extended Reporting Period herein. In order for the Named Assured to invoke the Extended Reporting Period option, the payment of the premium for the Extended Reporting Period must be paid to Underwriters within 30 days of the non-renewal.

Miller Insurance document: B0621PDIC00212 Primary layer

B.   The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, the Limits of Liability of the Underwriters for the Period of Insurance.

C.   The quotation by Underwriters of a different premium or deductible or Limits of Liability or changes in policy language for the purpose of renewal shall not constitute a refusal to renew by the Underwriters.

D.   The right to the Extended Reporting Period shall not be available to the Named Assured where cancellation or non-renewal by the Underwriters is due to non-payment of premium or failure of an Assured to pay such amounts in excess of the applicable Limit of Liability or within the amount of the applicable deductible.

E.   All notices and premium payments with respect to the Extended Reporting option shall be directed to Underwriters through the entity named in Item 9 of the Declarations.

F.   At the commencement of the Extended Reporting Period the entire premium shall be deemed earned, and in the event the Named Assured terminates the Extended Reporting Period for any reason prior to its natural expiration, Underwriters will not be liable to return any premium paid for the Extended Reporting Period.

X.   **Other Insurance**

This insurance shall apply in excess of any other valid and collectible insurance available to any Assured, unless such other insurance is written only as a specific excess insurance over the Limits of Liability of this Policy.

XI.   **Notice of Claim, or Circumstance That May Lead to a Claim**

A.   If during the Period of Insurance any Claim is made against the Assured, the Assured shall as soon as reasonably practicable forward to Underwriters through the persons named in Item 7 of the Declarations, every demand, summons, complaint or other notice of process received by the Assured or their representatives.

B.   If during the Period of Insurance the Assured first becomes aware of any circumstance which in the reasonable expectation of the Assured could give rise to a Claim being made against the Assured in respect of any act error or omission in rendering or failing to render professional services, the Assured will give as soon as reasonably practicable during the Period of Insurance written notice to Underwriters through the persons named in Item 7 of the Declarations of:-

   (1)   details of the circumstance, and

   (2)   details as to how the Assured first became aware of the circumstance, and

   (3)   the basis upon which the Assured concludes that the circumstance, could reasonably be expected to give rise to a Claim against the Assured.

Such notice having been given, Underwriters agree that any subsequent Claim made against the Assured arising from the said circumstance, shall be deemed to have been a Claim first made against the Assured at the time such written notice was first given to Underwriters.

Miller insurance document: B0621PDIC00212 Primary layer

C.    A Claim, or circumstance as described in paragraph B above, shall be considered to have been notified to Underwriters when written notice is first given by or on behalf of the Assured to Underwriters through persons named in Item 7 of the Declarations.

D.    All Claims made against the Assured arising out of the same act, error or omission or series of Claims related to the same act, error or omission shall be considered a single Claim. Such single Claim shall be deemed to have been first notified to Underwriters at the time the first Claim is reported to Underwriters and shall be subject to one single Limit of Liability.

E.    In the event of non-renewal of this Insurance by the Underwriters, the Assured shall have sixty (60) days from the expiration date of the Period of Insurance to notify Underwriters of Claims made against the Assured during the Period of Insurance which arise out of any act, error or omission which took place prior to the termination date of the Period of Insurance and are otherwise covered by this Insurance.

F.    If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an individual Assured shall not be imputed to any other individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

XII.    **Assistance and Co-operation of the Assured**

The Assured shall co-operate with the Underwriters in all investigations and, upon the Underwriters' request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization other than an employee of any Assured who may be liable to the Assured because of acts, errors or omissions with respect to which insurance is afforded under this Policy; and the Assured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Assured shall not, except at his own cost, admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgement or award or otherwise dispose of any Claim without the consent of the Underwriters.

Notwithstanding the foregoing, the Underwriters will not require the Assured to create or provide information to the Underwriters where the Assured demonstrates that it would not otherwise be required to provide such information to the Underwriters during discovery in the event of a dispute between them because of potential prejudice to the Assured in its defense of any Claim.

XIII.    **Action Against Underwriters**

No action shall lie against the Underwriters unless, as a condition precedent thereto, there shall have been full compliance with all terms of this Insurance, nor until the amount of the Assured's obligation to pay shall have been finally determined either by judgement or award against the Assured after actual trial or arbitration or by written agreement of the Assured, the claimant and the Underwriters.

Miller insurance document: B0621PDIC00212 Primary layer

Any person or organization or the legal representative thereof who has secured such judgment, award or written agreement shall thereafter be entitled to make a Claim under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Insurance to join the Underwriters as a party to an action or other proceeding against the Assured to determine the Assured's liability, nor shall the Underwriters be impleaded by the Assured or his legal representative. Bankruptcy or insolvency of the Assured or of the Assured's estate shall not relieve the Underwriters of any of their obligations hereunder.

XIV.   Subrogation

In the event of any payment under this Insurance, the Underwriters shall be subrogated to all the Assured's rights of recovery therefore against any person or organization and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Assured shall do nothing after the payment of Damages by Underwriters to prejudice such rights.

The Underwriters shall not exercise any such rights against any persons, firms or corporations included in the definition of "Assured". Notwithstanding the foregoing, however, the Underwriters reserve the right to exercise any rights of subrogation against an Assured in respect of any Claim brought about or contributed to by any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions of such Assured.

XV.   Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Insurance or stop the Underwriters from asserting any right under the terms of this Insurance; nor shall the terms of this Insurance be waived or changed, except by endorsement issued to form a part of this Insurance, signed by Underwriters.

XVI.   Change in Membership of Firm

Any additions to the list of lawyers in the application which take place during the Period of Insurance must be reported to Underwriters within thirty (30) days in the event that:

1)   the total number of new lawyers brought into or added to the firm during the Period of Insurance increases the number of lawyers as stated in the application for coverage by 5% of the total number of lawyers listed in the application; or

2)   any lawyer brought into or added to the firm during the Period of Insurance had been or was in the process of being reprimanded or censured by any court or bar association or disbarred or prohibited from practising in a specified area of law or before any court or administrative agency; or

3)   prior to joining the firm, any Claim had been made against the lawyer or the lawyer had become aware of circumstances that might lead to a Claim.

Underwriters expressly reserve the right to demand a premium adjustment in the event that any additions to the list of lawyers in the application for this Insurance meet the criteria set forth in the paragraphs immediately above.

Miller insurance document: B0621PDIC00212 Primary layer

XVII.   **Mergers And Acquisitions**

When any firm is merged into or acquired by the Named Assured, or an individual or a group of individuals who formerly practised at another firm become partners and/or employees of the Named Assured, this Policy shall indemnify the Named Assured (subject to its terms, conditions, exclusions and limitations), in respect of any Claim first made against the merged or acquired firm or individual(s), but only for acts committed subsequent to the date of their joining the Named Assured, and such merged or acquired firm or individual(s) shall be included hereunder effective from the date of joining as additional Assureds'.

It is understood and agreed however that:

(a)   when any such merger, acquisition or group of individuals who practised together at another firm increases the total number of lawyers of the Named Assured by more than five percent (5%) or 25 lawyers (whichever is the lesser), then within thirty (30) days of the merger or acquisition, the Named Assured shall notify Underwriters through the Assured's Representative as named in Item 9 of the Declarations; and

(b)   within thirty (30) days of receipt of notification, Underwriters agree to add the merged or acquired firm or individual(s) subject to such terms and conditions as Underwriters, in their discretion, may require. If, however, within thirty (30) days of receiving notification of the merger or acquisition Underwriters do not otherwise require any terms and conditions to the merger or acquisition, then the additional premium on the number of new lawyers shall be calculated at pro rata (from the date of merger or acquisition) of one hundred percent (100%) of the annual per capita rate charged by Underwriters for this Policy at inception.

Unless specifically agreed by endorsement hereto, such merged or acquired firm, or firm at which such group of individuals formerly practised shall not be deemed to be a "Predecessor in Business" of the Named Assured irrespective of whether or not notification to Underwriters is required as described above.

XVIII.   **Assignment**

The interest hereunder of any Assured is not assignable. If the Assured shall die or be adjudged incompetent, this insurance shall cover the Assured's legal representative as the Assured with respect to liability previously incurred and covered by this insurance.

XIX.   **Cancellation**

This Policy is non-cancellable by either party during the Period of Insurance as stated in the Declarations, except in the event that the premium is unpaid then this Policy will be cancelled in accordance with the terms of the Premium Payment Warranty attaching to this Policy.

XX.   **Entire Contract**

By acceptance of this Policy the Assured agrees that the statements in the Declarations and Application are its agreements and representations, that this insurance is issued in reliance upon the truth of such representations and that this Policy and the Application embodies all agreements existing between the Assured and the Underwriters relating to this insurance.

Miller insurance document: B0621PDIC00212 Primary layer

XXI.   **Nuclear Incident Exclusion Clause -- Liability -- Direct**

The Insurance provided by this Policy does not apply:

A.   To injury, sickness, disease, death or destruction

(1)   with respect to which an Assured under this Policy of Insurance is also an Assured under a nuclear energy liability insurance issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an Assured under any such insurance but for its termination upon exhaustion of its Limit of Liability; or

(2)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organisation is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Assured is, or had this insurance not been issued would be, entitled to indemnity from the United States of America, or any agency thereof under any agreement entered into by the United States of America, or any agency thereof, with any person or organisation.

B.   Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C.   To injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(1)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Assured or (2) has been discharged or dispersed therefrom;

(2)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Assured; or

(3)   the injury, sickness, disease, death or destruction arises out of the furnishing by an Assured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to injury to or destruction of property at such nuclear facility.

Miller insurance document: B0621PDIC00212 Primary layer

D.   As used in this clause: "**hazardous properties**" include radioactive, toxic or explosive properties; "**nuclear material**" means source material, special nuclear material or byproduct material; "**source material**", "**special nuclear material**" and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "**waste**" means any waste material (1) containing by-product material and (2) resulting from operation by any person or organisation of any nuclear facility included within the definition of nuclear facility under paragraph (1) or (2) thereof; "**nuclear facility**" means

(1)   any nuclear reactor;

(2)   any equipment or device used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilising spent fuel, or (3) handling, processing or packaging waste;

(3)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total cost amount of such material in the custody of the Assured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233, or any combination thereof, or more than 250 grams of uranium 235; or

(4)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Insurance to which it is attached.

XXII.   **War And Civil War Exclusion Clause**

Notwithstanding anything to the contrary contained herein this Insurance does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction or damage to property by or under the order of any government or public or local authority.

XXIII.   **Service Of Suit**

1   It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due under this Insurance, Underwriters hereon, at the request of the Named Assured,

Miller Insurance document: B0621PDIC00212 Primary layer

will submit to the jurisdiction of a court of competent jurisdiction within the United States. This condition does not constitute an agreement should not be understood to constitute an agreement by Underwriters that an action is properly maintained in a specific forum, nor may it be construed as a waiver of Underwriters' rights to commence an action in a court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any State of the United States, all of which rights Underwriters expressly reserve. It is further agreed that service of process in such suit may be made upon Persons named in Item 8 of the Declarations and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such court or any Appellate Court in the event of an appeal.

2      The persons named in Item 8 of the Declarations are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Named Assured to give written undertaking to the Named Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted, Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters herein designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the persons named in Item 8 of the Declarations as the persons to whom the said officer is authorized to mail such process or true copy thereof.

LAW-93 672-HGC-00002 (amended)

Miller insurance document: B0621 PDIC00212 Primary layer

## ENDORSEMENTS

1. __U.S.A.__

   RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE - LIABILITY - DIRECT
   *(Approved by Lloyd's Underwriters' Non-Marine Association)*

   *For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause - Liability - Direct) to liability insurances affording worldwide coverage.*

   In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

   13/2/64
   N.M.A. 1477

2. RETROACTIVE EXCLUSIONS FOR WORK PERFORMED FOR SPECIFIC FINANCIAL INSTITUTIONS

   It is understood and agreed that, notwithstanding anything contained herein to the contrary, this Policy shall not provide coverage to any Assured in respect of any Claim made against the Assured by reason of any negligent act, error or omission committed or alleged to have been committed, prior to 20th December, 1991, or 1st July, 1996 in respect of Oshinsky which, together with any negligent act, error or omission committed or alleged to have been committed prior to 20th December 1991, would constitute an interrelated Wrongful Act (as defined herein) where such Claim is based upon or arises out of the Assured's rendering or failure to render Professional Services to the following institution:

   DOMINION BANK OF WASHINGTON N.A.

   The term interrelated Wrongful Act shall mean any negligent acts, errors or omissions which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

   This exclusion does not apply where the Assured's representation of the Dominion Bank of Washington N.A is limited solely to:-

   a) the preparation of documentation for and the representation of Dominion Bank of Washington N.A. at loan closings of first mortgage loans (to individual borrowers) solely with respect to 1-4 family residential properties; or

   b) collection and/or foreclosure proceedings initiated by or against the Dominion Bank of Washington N.A. or

   c) any personal injury actions; or

Miller Insurance document. B0621PDIC00212 Primary layer

d) the issuance of opinion letters, concerning the Dominion Bank of Washington N.A. deposit records, deposit accounts, certificates of deposit or safety deposit boxes, including the dispersal of any funds held by the Dominion Bank of Washington N.A. as escrow agent or dispersals mandated by court order; or

e) the issuance of any letter which discusses the status or renders the opinion on any litigation matters involving the Dominion Bank of Washington N.A.; or

f) employment or labor relations matters which concern employees of the Dominion Bank of Washington N.A.

This exception to the exclusion does not extend to employment or labor relation issues between the Dominion Bank of Washington N.A. and any of its directors or officers, for which matters no coverage is provided; or

g) any actions or proceedings instituted by the Dominion Bank of Washington N.A. which are related to the Dominion Bank of Washington N.A.'s rights or obligations under any Bankers Blanket Bond Insurance Policy, as defined herein.

Bankers Blanket Bond Insurance Policy shall mean any Policy issued to the Dominion Bank of Washington N.A. which provides coverage for losses arising out of any forged instruments, dishonesty, or loss of property on the premises or in transit, provided that the loss in question was not committed or alleged to have been committed by any director or officer of the Dominion Bank of Washington N.A.

3. **MR T. BEALE**

It is hereby understood and agreed that Mr T. Beale of S.J Berwin is included as a Named Assured but only for work performed on behalf of the Assured.

4. **MR FREDERICK M. LOWTHER**

It is hereby understood and agreed that Mr Frederick M. Lowther has taken up the position of In-House General Counsel for Kayspan Energy.

Notwithstanding Exclusions (f) and (g) of this Policy, it is further understood and agreed that this Policy shall provide indemnity for Claims made against an Assured arising out of professional services as a lawyer, fiduciary or notary public provided in the name of Dickstein Shapiro Morin & Oshinsky LLP or Dickstein Shapiro LLP to Kayspan Energy.

5. **RETROACTIVE DATE ENDORSEMENT**

It is understood and agreed that, notwithstanding anything contained herein to the contrary other than as stated in Endorsement 2, this Policy shall not apply to any Claim or circumstance made against the Assured by reason of any negligent act, error or omission committed, or alleged to have been committed prior to the 20th December, 1985.

Miller Insurance document: B0621PDIC00212 Primary layer

It is further understood and agreed that, notwithstanding anything contained herein to the contrary, this Policy shall not apply to any Claim or circumstance made against the Assured by reason of any negligent act, error or omission committed, or alleged to have been committed prior to the 1st July 1998 in respect of Oshinsky.

6. **SELF REPRESENTATION ENDORSEMENT**

Notwithstanding anything contained in the Policy to the contrary, the Assured shall be entitled to request self-representation on Claims and circumstances which are notified to the Underwriters subject to the following conditions:

1. In advance of any self-representation by the Assured, the Underwriters have the right on a case by case basis to determine that self-representation would not be appropriate at all or only in part, or that self representation would not be appropriate for a particular stage in the proceedings. The Underwriters' consent to the Assured's request for self-representation shall not be unreasonably withheld.

2. The Assured would have the right to apply the reasonable time and claims expenses it incurs in self-representation against the deductible (and in the event the deductible is exceeded, to be compensated for its services by the Underwriters). The Underwriters and Assured agree that the billing rates to be used by the Assured will be equal to and not greater than two thirds of the Assured's standard rates.

3. The Assured will not apply against the deductible (or otherwise bill to the Underwriters in the event the deductible is exceeded) (a) the time and expense it incurs in the handling of a Claim in its capacity as the Assured (as opposed to acting in its capacity as defense counsel) and (b) the time and claims expense incurred by lawyers in the firm who are as involved in the underlying claim, including without limitation, as defendants, as witnesses or as factual resources in the development, understanding and defense of the underlying claim.

4. If required by Underwriters the law firm of Furman Kornfeld & Brennan LLP (the "firm") will act as supervisory counsel for the Underwriters, and will manage each Claim on behalf of the Underwriters in co-operation with the Assured.

5. In the event the Assured requests and the Underwriters consent to self-representation and on a case by case basis, the Assured and Furman Kornfeld & Brennan LLP promptly will agree in writing upon the staffing requirements for each matter, which will include the individual lawyers and staff proposed by the Assured for its self-representation.

6. Furman Kornfeld & Brennan LLP will review, if required by the Underwriters, the fees and claims expenses incurred by the Assured for its self-representation.

7. The Assured will designate a partner to act as a liaison with Furman Kornfeld & Brennan LLP on each Claim, and will keep Furman Kornfeld & Brennan LLP apprised regularly of the status and developments of each matter for which the Assured's request for self-representation has been approved by the Underwriters.



Miller insurance document: B0621PDIC00212 Primary layer

7.   **EXCLUSIONS F AND G (AMENDED IN RESPECT OF SPECIFIED ENTITIES)**

It is hereby noted and agreed, notwithstanding the provisions of Exclusions (f) and (g) of the Policy, that cover will apply to Claims arising out of the performance of professional services for the following entities arising out of the conduct of the Assured's profession as a lawyer, mediator, arbitrator, fiduciary or lobbyist provided that the services are performed on behalf of the Named Assured with the approval of the New Business Committee or the Executive Committee of the Named Assured, or as a Notary Public.

Listed Entities.

VSSL Holdings
Financial & Management Consulting, Inc
Hafner Inc
Malaysian Palm Oil Council
Ocean Marine Navigation Company, Inc
Federated Investors
Federated Family of Funds
Friends of Bermuda Aquariums Ltd
Metier Ltd
International Inns Exchange
The Smith Company
The Morey Organisation
Fox Family Partnership
Buyers Desire, Inc.
Buyersdesire, Inc.
Southwest Foundation
International Inns
Central Square Limited
The Central Group, Inc.
EEX Corp
Gulf Midstream Services
KeySpan Energy Development Corp
Northeast Gas Markets, Inc
Cosmos Club
Coastal OB/GYN, P.A.
NCM, Inc
Alberta Northeast Gas Ltd
Boundary Gas, Inc.
Coastline Partners LLC,
Poseidon Carlsbad, LLC
National Association of Watch and Clock Collectors
The RSE Foundation, Inc.
Riggs Bank Board of Consultants
National Family Caregivers Assoc. (not for profit)
Jamestown Foundation
Jewish Foundation for Group Homes
PDA Verticals Corporation
PlanetGov Inc
Bread for City, Inc

Miller insurance document: B0621PDIC00212 Primary layer

Monthly Mitzah Fund, Inc
Luthern Endowment for Novosaratovka
Seminary Foundation
Endowment for Novosaratovka Seminary Foundation
Capital Education Fund
Institute for Educational Equity and Opportunity
The Maria Nobrega Foundation (USA)
Appleseed Foundation
Pfizer Inc
B'Nai Shalom of Olney
Classika-Synetic Theatre
Synetic Theatre
National Association of Women Lawyers
Student Conservation Association, Inc
North Point Advisors LLC
John Hopkins University
Exiles Rugby, Inc
Poseidon Resources
E-volve Technologies Systems, Inc
Greater Washington Initiative
Metropolitan Club of Washington DC
Sunbelt Holding, Inc
Charmer Industries, Inc
Washington Lawyers' Committee for Civil Rights and Urban Affairs (WLC)
VMI Research Laboratories
Branch Banking & Trust
Vibration & Sound Solutions, Inc
The Claudine B. Malone Family Trust-Claudine B Malone
Priscilla F. Hafner Family Trust-Harold and Priscilla
Hafner Estate Planning
American Palm Oil Council
POWI Entertainment
The James L. Eichberg Foundation, Inc
Human Rights Watch
Night Moves LLC
University of Maryland -- Greenebaum Cancer Center
Media Access Project
Kin Properties, Inc
Poseidon Water LLC
utility.net
Bel Alton Volunteer Fire Dept
Foundation for the Preservation of Historic Georgetown
American Jazz Venues
DIJO Productions Theatre Company
Santa Barbara Theatre
Sundial Theatre Company
Washington Shakespeare Company
AEGIS Capital Group LLC
Boys & Girls Clubs of Great Washington
Everseeled Windows Inc

Miller insurance document: B0621PDIC00212 Primary layer

The Fund for New Orleans
FullCourt Entertainment II, LLC
Southern California Outrigger Racing Association
Burn Lounge Inc
Brickman Real Estate Trust Fund
Grow Fast Grow Right Enterprise LLC
LRG
Washington Lawyers' Committee for Civil Rights Under Law
Ulman Cancer Fund for Young Adults
Brickman & Associates
DC Lawyers for Youth
Telepath Networks, Inc.
Ice Energy, Inc.
Atlantic Conservation Partnership
Career College Association
Aegis SMB Fund II LP
Utility.net
Independent Film Producers
Ann S. Lilt Foundation
Lapster LLC
Bread for the City
Johns Hopkins University
WestView Builders
WestView Capital
Doing Small Miracle for Others
Maxim Power Corporation and subsidiaries
International Bridges to Justice
Polybrite Corp.
B B & T
Alberta Northeast Ltd.
EverSealed Windows, Inc.
EtherMetrios LLC
E3Greentech Ventures, Inc
Conservation Atlantic Partnership
Women's Voices. Women Vote
Women's Voices. Women Vote Action Fund
Legal Counsel for the Elderly
E3 Greentech Enterprises, Inc.
Maxim Power (USA), Inc.
Maxim Power (USA) Holding Company Inc.
Children's Future International, Inc.
Doing Small Miracles
Charmer Sunbelt Group
RAND Corporation – Institute for Civil Justice ("ICJ")
Falcon Data Technology, LLC
Voter Participation Center
Northeast Gas Markets, LLC
Doing Small Miracles for Others
Alberta Northeast Gas
United Negro College Fund Special Programs Corporation



Botardi Trusts
Merrywood on the Potomac Phase II
Navy League of the United States
World Cares Center, NYC
Fox Family Office, Inc
Harbour Group Industries, Inc
The Alliance for Children's Rights
Bread for the City, Inc .
Bread, Inc

8. **ASBESTOS EXCLUSION FOR LAWYERS**

Notwithstanding any other provision in this Policy, this Insurance does not apply to:

Any loss, cost or expense, directly or indirectly arising out of, resulting as a consequence of, or related to the manufacture, mining, processing, distribution, testing, remediation, removal, storage, disposal, sale, use of, or exposure to asbestos or materials or products containing asbestos, whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.

This exclusion shall not however apply to Claims brought against the Assured arising out of the provision of professional services for others in the Assured's capacity as a lawyer, mediator, arbitrator, fiduciary, notary public or lobbyist.

9. **MOLD AND OTHER TYPES OF FUNGI EXCLUSION FOR LAWYERS**

Notwithstanding any other provision in this Policy, this Insurance does not apply to:

Any loss, cost, or expense, directly or indirectly arising out of, resulting from or in any manner related to "Fungi" whether or not there is another cause of loss which may have contributed concurrently or in any sequence to a loss.

"Fungi" as utilised herein shall mean any fungus or mycota or any by-product or type of infestation produced by such fungus or mycota, but not limited to mold, mildew, mycotoxins, spores or any biogenic aerosols.

This exclusion shall not however apply to Claims brought against the Assured arising out of the provision of professional services for others in the Assured's capacity as a lawyer, mediator, arbitrator, fiduciary, notary public or lobbyist.

10. **WAR AND TERRORISM EXCLUSION ENDORSEMENT**

Notwithstanding any provision to the contrary within this Insurance or any endorsement thereto it is agreed that this Insurance excludes loss, liability, injury, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

Miller insurance document: B0621PDIC00212 Primary layer

2.    any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, liability, injury, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, liability, injury, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

Notwithstanding the foregoing, this endorsement shall not apply to any Claim arising out of or connected with the performance or failure to perform professional services by or on behalf of the Assured, which would otherwise be covered under this Policy.

NMA2918 (amended)

11.    **PREMIUM PAYMENT WARRANTY**

IT IS WARRANTED that the premium due to Underwriters under this Policy is to be paid within 45 days of inception.

Non-receipt by Underwriters of such premium in full, by the due premium payment date, shall render this Policy void *ab initio*.

12.    **DISPUTES CLAUSE**

It is hereby noted and agreed that any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

13.    **SMALL ADDITIONAL OR RETURN PREMIUMS CLAUSE (U.S.A.)**

NOTWITHSTANDING anything to the contrary contained herein and in consideration of the premium for which this Insurance is written, it is understood and agreed that whenever an additional or return premium of USD 2 or less becomes due from or to the Assured on account of the adjustment of a deposit premium or of an alteration in coverage or rate during the term or for any other reason, the collection of such premium from the Assured will be waived or the return of such premium to the Assured will not be made, as the case may be.

NMA1168



Miller insurance document: B0621PDIC00212 Primary layer

**14.   CONDITION OF PAYMENT**

It is hereby agreed that any payment under this Policy shall only be made in full compliance with all United States of America economic and trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.**



Miller insurance document: B0621PDIC00212 Primary layer

**Information**

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated 17 December 2012.

Miller insurance document: B0621PDIC00212 Primary layer

## Security Details

### LMA3333

### (RE)INSURERS LIABILITY CLAUSE

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**Order Hereon:**          100% of 100%

Miller Insurance document: B0621PDIC00212 Primary layer

## Schedule of Security

| | |
|---|---|
| 60.97% | Lloyd's Underwriters as per schedule |
| 9.03% | Lexington Insurance Company |
| 30.00% | Swiss Re International SE - Zurich |
| 100.00% | of 100.00% Order |

## Schedule of Lloyd's Underwriters

| | | |
|---|---|---|
| 22.58% | Lloyd's Syndicate 2987 | BRT |
| 18.52% | Lloyd's Syndicate 2623 | AFB |
| 4.06% | Lloyd's Syndicate 0623 | AFB |
| 6.78% | Lloyd's Syndicate 0435 | FDY |
| 4.51% | Lloyd's Syndicate 2001 | AML |
| 4.52% | Lloyd's Syndicate 1458 | RNR |
| 60.97% | of 100.00% Order | |

Miller insurance document: B0621PDIC00312 First excess layer

**Assured:** Dickstein Shapiro LLP

Address:
1825 Eye Street NW,
Washington,
DC 20006

**Period:** From 20th December 2012
To: 20th December 2013
Both days at 12.01 am, local standard time at the address of the Assured.

**Premium:**

## EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

**This Policy's amount of liability:** USD 15,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy.

**Underlying Policy(ies) limits:** USD 15,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording.

Which in turn excess of deductible:

USD 1,000,000 each claim deductible including claims expenses

USD 2,000,000 in the aggregate, including claims expenses

USD 250,000 each and every claim, including claims expenses, to apply in the event of the exhaustion of the aggregate deductible amount

**Underlying Policy(ies) Number(s):** B0621PDIC00212

Miller insurance document: B0621PDIC00312 First excess layer

1. Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2. It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3. If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this Insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

   (a) Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

   (b) Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4. In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5. Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6. All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7. Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

8. If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an individual Assured shall not be imputed to any other individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

04/00
LSW055(Amended)

Miller insurance document: B0621FDIC00312 First excess layer

## ENDORSEMENTS

**1.    SERVICE OF SUIT CLAUSE (U.S.A.)**

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured (or Reassured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon McCullough, Campbell & Lane LLP, 205 North Michigan Avenue, Suite 1400, Chicago, Illinois 60601-5925, U.S.A. and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured (or Reassured) to give a written undertaking to the Assured (or Reassured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reassured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unaltered.

NMA 1998 (24/4/86)

**2.    PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception

823AFB00082

**3.    CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

Miller insurance document: B0621PDIC00312 First excess layer

**Information**

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated December 17, 2012

Miller insurance document: B0621PDIC00312 First excess layer

**Security Details**

<u>LMA3333</u>

(RE)INSURERS LIABILITY CLAUSE

(Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

Order Hereon:          100% of 70.62%

Miller insurance document: B0621PDIC00312 First excess layer

**Schedule of Security**

| | | |
|---|---|---|
| 34.75% | Lloyd's Underwriters as per schedule | |
| 5.87% | Lexington Insurance Company | |
| 30.00% | Swiss Re International SE - Zurich | |
| 70.62% | of 70.62% Order | |

**Schedule of Lloyd's Underwriters**

| | | |
|---|---|---|
| 12.05% | Lloyd's Syndicate 2623 | AFB |
| 2.64% | Lloyd's Syndicate 0623 | AFB |
| 5.87% | Lloyd's Syndicate 2987 | BRT |
| 4.41% | Lloyd's Syndicate 0435 | FDY |
| 5.87% | Lloyd's Syndicate 2001 | AML |
| 3.91% | Lloyd's Syndicate 1458 | RNR |
| 34.75% | of 70.62% Order | |

Miller insurance document: B0621PDIC00312001 First excess layer

**Policy Number:** B0621PDIC00312001

**Assured:** Dickstein Shapiro LLP

Address:
1825 Eye Street NW,
Washington,
DC 20006

**Period:** From 20th December 2012
To: 20th December 2013
Both days at 12.01 am, local standard time at the address of the Assured.

**Premium:**

---

### EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter refered to as "the Underlying Policy(ies)".

**This Policy's amount of liability:** USD 15,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy.

**Underlying Policy(ies) limits:** USD 15,000,000, each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording.

Which in turn excess of deductible:

USD 1,000,000 each claim deductible including claims expenses

USD 2,000,000 in the aggregate, including claims expenses

USD 250,000 each and every claim, including claims expenses, to apply in the event of the exhaustion of the aggregate deductible amount

**Underlying Policy(ies) Number(s):** B0621PDIC00212

Miller insurance document: B0621PDIC00312001 First excess layer

1.  Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.  It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.  If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

    (a)  Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

    (b)  Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.  In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld).  No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

8.  If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the Individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an Individual Assured shall not be imputed to any other Individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

04/00 LSW055(Amended)

Miller insurance document: B0621PDIC00312001 First excess layer

## ENDORSEMENTS

**1.    SERVICE OF SUIT CLAUSE (U.S.A.)**

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured (or Reassured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon McCullough, Campbell & Lane LLP, 205 North Michigan Avenue, Suite 1400, Chicago, Illinois 60601-5925, U.S.A. and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured (or Reassured) to give a written undertaking to the Assured (or Reassured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reassured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unaltered.

NMA 1998 (24/4/86)

**2.    PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception

**3.    CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

Miller insurance document: B0621PDIC00312001 First excess layer

## Information

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated December 17th 2012

Miller insurance document: B0621PDIC0031 2001 First excess layer

## Security Details

### LMA3333

**(RE)INSURERS LIABILITY CLAUSE**

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**Order Hereon:**          100% of 29.36%

Miller insurance document: B0621PDIC00312001 First excess layer

### Schedule of Security

| | |
|---|---|
| 100.0000% | Scottsdale Insurance Company through Huntersure, LLC |
| 100.0000% | of 29.3800% Order |

Miller insurance document: B0621PDIC01012 Second excess layer

**Policy Number:** B0621PDIC01012

**Assured:** Dickstein Shapiro LLP

Address:
1825 Eye Street NW,
Washington,
DC 20006

**Period:** From   20th December 2012
To:      20th December 2013
Both days at 12.01 am, local standard time at the address of the Assured.

**Premium:**

<hr/>

### EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

**This Policy's amount of liability:** USD20,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy.

**Underlying Policy(ies) limits:** USD30,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording.

Which in turn excess of deductible:

USD1,000,000   each claim deductible including claims expenses

USD2,000,000   in the aggregate, including claims expenses

USD250,000   each and every claim, including claims expenses, to apply in the event of the exhaustion of the aggregate deductible amount

**Underlying Policy(ies) Number(s):** B0621PDIC00212 and B0621PDIC00312

Miller Insurance document: B0621PDIC01012 Second excess layer

1. Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2. It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3. If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

   (a) Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

   (b) Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4. In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5. Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6. All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7. Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

Miller insurance document: B0621PDIC01012 Second excess layer

B.    If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the Individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an Individual Assured shall not be imputed to any other Individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

C4/00
LSW055(Amended)

Miller Insurance document: B0621PDIC01012 Second excess layer

## ENDORSEMENTS

**1.    PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception

**2.    CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

**3.    ARBITRATION CLAUSE ENDORSEMENT**

Any dispute arising out of or relating to this Policy or the breach, cancellation, termination or validity of this Policy shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party to the dispute may notify the others of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. Any party or parties who have been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party or parties notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, any of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Endorsement 3 of the Policy shall be deemed made if in writing and mailed to the last known address of the other party or parties.

The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing at the option of said Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

Miller insurance document: B0621PDIC01012 Second excess layer

The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of serious irregularity. Without limiting the foregoing, the Parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law, including, without limitation, application or appeal under Sections 45 and 69 of the Act.

Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

The Underwriters and the Assured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Underwriters by any of the Assured's other insurers in any jurisdiction or forum other than that set forth in this Endorsement 3, the Assured will in good faith take all reasonable steps requested by the Underwriters to assist the Underwriters in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Underwriters would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Assured shall be entitled to assert claims against the Underwriters for coverage under this Policy, including, without limitation, for amounts by which the Assured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Underwriters and the Assured pursuant to this Endorsement 3, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Underwriters in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Underwriters in such arbitration, irrespective of whether or not the Underwriters remained a party to such action or proceeding).

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.**

Miller insurance document: B0621PDIC01012 Second excess layer

**Information**

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated December 17, 2012

Miller insurance document: B0621PDIC01012 Second excess layer

**Security Details**

<u>LMA3333</u>

(RE)INSURERS LIABILITY CLAUSE

(Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

Order Hereon;          100% of 75%



Miller insurance document: B0621PDIC01012 Second excess layer

## Schedule of Security

| | | |
|---|---|---|
| 37.5000% | Liberty Mutual Insurance Europe Limited<br>Trading as Liberty International Underwriters | |
| 12.5000% | International Insurance Company of Hannover Ltd | |
| 25.0000% | Swiss Re International SE - Zurich | |
| 75.0000% | of 75.0000% Order | |

Miller insurance document: B0621PDIC01012001 Second excess layer

| | |
|---|---|
| **Policy Number:** | B0621PDIC01012001 |
| **Assured:** | Dickstein Shapiro LLP |
| | Address:<br>1825 Eye Street NW,<br>Washington,<br>DC 20006 |
| **Period:** | From   20th December 2012<br>To:   20th December 2013<br>Both days at 12.01 am, local standard time at the address of the Assured. |
| **Premium:** | |

## EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

| | |
|---|---|
| **This Policy's amount of liability:** | USD20,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |
| **Underlying Policy(ies) limits:** | USD30,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording. |
| | Which in turn excess of deductible: |
| | USD1,000,000   each claim deductible including claims expenses |
| | USD2,000,000   in the aggregate, including claims expenses |
| | USD250,000   each and every claim, including claims, expenses, to apply in the event of the exhaustion of the aggregate deductible. amount |
| **Underlying Policy(ies) Number(s):** | B0621PDIC00212 and B0621PDIC00312 |

Miller insurance document: B0621PDIC01012001 Second excess layer

1.   Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.   It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.   If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this Insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

     (a)   Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

     (b)   Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.   In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.   Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.   All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.   Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

8.   If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an individual Assured shall not be imputed to any other individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

04/00
LSW055(Amended)

Miller insurance document: B0621PDIC01012001 Second excess layer

## ENDORSEMENTS

**1.    PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception

**2.    CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

**3.    ARBITRATION CLAUSE ENDORSEMENT**

Any dispute arising out of or relating to this Policy or the breach, cancellation, termination or validity of this Policy shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party to the dispute may notify the others of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. Any party or parties who have been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party or parties notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a Judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a Judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, any of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a Judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Endorsement 3 of the Policy shall be deemed made if in writing and mailed to the last known address of the other party or parties.

The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing at the option of said Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

Miller insurance document: B0621PDIC01012001 Second excess layer

The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of serious irregularity. Without limiting the foregoing, the Parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law, including, without limitation, application or appeal under Sections 45 and 69 of the Act.

Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

The Underwriters and the Assured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Underwriters by any of the Assured's other insurers in any jurisdiction or forum other than that set forth in this Endorsement 3, the Assured will in good faith take all reasonable steps requested by the Underwriters to assist the Underwriters in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Underwriters would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Assured shall be entitled to assert claims against the Underwriters for coverage under this Policy, including, without limitation, for amounts by which the Assured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Underwriters and the Assured pursuant to this Endorsement 3, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Underwriters in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Underwriters in such arbitration, irrespective of whether or not the Underwriters remained a party to such action or proceeding).

**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.**



Miller insurance document: B0621PDIC01012001 Second excess layer

## Information

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated December 17, 2012

Miller insurance document: B0621PDIC01012001 Second excess layer

## Security Details

### LMA3333

(RE)INSURERS LIABILITY CLAUSE

(Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

Order Hereon:          100% of 25%

Miller insurance document: B0621PDIC01012001 Second excess layer

**Schedule of Security**

25.0000%     Allied World Assurance Company Ltd

25.0000%     of 25.0000% Order

Miller Insurance document: B0621PDIC00512 Third excess layer

| | |
|---|---|
| **Policy Number:** | B0621PDIC00512 |
| **Assured:** | Dickstein Shapiro LLP |
| | **Address:**<br>1825 Eye Street NW,<br>Washington,<br>DC 20006 |
| **Period:** | From 20ᵗʰ December 2012<br>To: 20ᵗʰ December 2013<br>Both days at 12.01 am, local standard time at the address of the Assured. |
| **Premium:** | |

## EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

| | |
|---|---|
| **This Policy's amount of liability:** | USD 10,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy. |
| **Underlying Policy(ies) limits:** | USD 50,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording. |
| | Which in turn excess of deductible: |
| | USD 1,000,000    each claim deductible including claims expenses |
| | USD 2,000,000    in the aggregate, including claims expenses |
| | USD 250,000    each and every claim, including claims expenses, to apply in the event of the exhaustion of the aggregate deductible amount |
| **Underlying Policy(ies) Number(s):** | B0621PDIC00212, B0621PDIC00312, B0621PDIC01012 and B0621PDIC01012001 |

Miller insurance document: B0621PDIC00512 Third excess layer

1.  Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2.  It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3.  If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

    (a)   Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

    (b)   Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4.  In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5.  Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6.  All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7.  Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

8.  If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an individual Assured shall not be imputed to any other individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

04/00
LSW055 (Amended)

Miller insurance document: B0621PDIC00512 Third excess layer

## ENDORSEMENTS

**1. SERVICE OF SUIT CLAUSE (U.S.A.)**

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured (or Reassured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon McCullough, Campbell & Lane LLP, 205 North Michigan Avenue, Suite 1400, Chicago, Illinois 60601-5925, U.S.A. and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured (or Reassured) to give a written undertaking to the Assured (or Reassured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured (or Reassured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions remain unaltered.

NMA 1998 (24/4/86)

**2. PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception

623AFB00062

**3. CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

### ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.

Miller insurance document: B0621PDIC00512 Third excess layer

**Information**

Number of lawyers used by Underwriters for premium rating hereon is 315.5

No Claims Declaration dated December 17, 2012

Miller insurance document: B0621PDIC00512 Third excess layer

## Security Details

### LMA3333

**(RE)INSURERS LIABILITY CLAUSE**

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**Order Hereon:**        100% of 100%

Miller insurance document: B0621PDIC00512 Third excess layer

**Schedule of Security**

100.0000%      Ironshore Specialty Insurance Company

100.0000%      of 100.0000% Order

Miller insurance document B0621PDIC00612 Fourth excess layer

| | |
|---|---|
| **Policy Number:** | B0621PDIC00612 |
| **Assured:** | Dickstein Shapiro LLP |
| | **Address:** |
| | 1825 Eye Street NW, |
| | Washington, |
| | DC 20006 |
| **Period:** | From 20th December 2012 |
| | To:    20th December 2013 |
| | Both days at 12.01 am, local standard time at the address of the Assured. |
| **Premium:** | |

---

### EXCESS ERRORS AND OMISSIONS
### (EXCESS: AGGREGATE COSTS INCLUSIVE)

To pay on behalf of the Assured for claim or claims first made against the Assured during the Period of Insurance hereon up to this Policy's amount of liability (as hereinafter specified) in the aggregate, the excess of the Underlying Policy(ies) limits (as hereinafter specified) in the aggregate, the latter amount being the subject of Indemnity Policy(ies) (as hereinafter specified) or any Policy(ies) issued in substitution or renewal thereof for the same amount effected by the Assured and hereinafter referred to as "the Underlying Policy(ies)".

**This Policy's amount of liability:**  USD15,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as more fully defined in the primary policy.

**Underlying Policy(ies) limits:**  USD60,000,000 each and every claim and in the aggregate including claims expenses, plus one reinstatement (round the clock basis) as per policy wording.

Which in turn excess of deductible:

USD1,000,000    each claim deductible including claims expenses

USD2,000,000    in the aggregate, including claims expenses

USD250,000    each and every claim, including claims expenses, to apply in the event of the exhaustion of the aggregate deductible amount

**Underlying Policy(ies) Number(s):**  B0621PDIC00212, B0621PDIC00312, B0621PDIC01012, B0621PDIC01012001 and B0621DIC00512

Miller Insurance document: B0621PDIC00612 Fourth excess layer

1. Liability to pay under this Policy shall not attach unless and until the Underwriters of the Underlying Policy(ies) shall have paid or have admitted liability or have been held liable to pay, the full amount of their indemnity inclusive of costs and expenses.

2. It is a condition of this Policy that the Underlying Policy(ies) shall be maintained in full effect during the currency of this Policy except for any reduction of the aggregate limits contained therein solely by payment of claims or of legal costs and expenses incurred in defence or settlement of such claims.

3. If by reason of the payment of any claim or claims or legal costs and expenses by the Underwriters of the Underlying Policy(ies) during the period of this Insurance, the amount of indemnity provided by such Underlying Policy(ies) is:-

   (a) Partially reduced, then this Policy shall apply in excess of the reduced amount of the Underlying Policy(ies) for the remainder of the Period of Insurance;

   (b) Totally exhausted, then this Policy shall continue in force as Underlying Policy until expiry hereof.

4. In the event of a claim arising to which the Underwriters hereon may be liable to contribute, no costs shall be incurred on their behalf without their consent being first obtained (such consent not to be unreasonably withheld). No settlement of a claim shall be effected by the Assured for such a sum as will involve this Policy without the consent of Underwriters hereon.

5. Any claim(s) made against the Assured or the discovery by the Assured of any loss(es) or any circumstances of which the Assured becomes aware during the subsistence hereof which are likely to give rise to such a claim or loss, shall, if it appears likely that such claim(s) plus costs and expenses incurred in the defence or settlement of such claim(s) or loss(es) may exceed the indemnity available under the Policy(ies) of the Primary and Underlying Excess Insurers, be notified immediately by the Assured in writing to the Underwriters hereon.

6. All recoveries or payments recovered or received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Assured and the Underwriters provided always that nothing in this Policy shall be construed to mean that loss settlements under this Policy are not payable until the Assured's ultimate net loss has been finally ascertained.

7. Except as otherwise provided herein this Policy is subject to the same terms, exclusions, conditions and definitions as the Policy of the Primary Insurers. No amendment to the Policy of the Primary Insurers during the period of this Policy shall be effective under this Policy until agreed in writing by the Underwriters.

8. If any Assured shall make any Claim under this Policy knowing such Claim to be false or fraudulent, as regards amount or otherwise, this Policy shall become null and void as to the individual Assured making such a Claim and all coverage hereunder shall be forfeited in respect of such false or fraudulent Claim. Such false or fraudulent Claim by an individual Assured shall not be imputed to any other individual Assured(s) until a competent court of final adjudication has determined such imputation is valid.

04/00
LSW055 (Amended)

Miller insurance document: B0621PDIC00612 Fourth excess layer

## ENDORSEMENTS

**1.**   **PREMIUM PAYMENT WARRANTY**

IT IS HEREBY WARRANTED that all Premium due to Underwriters under this Policy is to be paid within 45 days from inception.

Non-receipt by Underwriters of such Premium, by midnight (local standard time) on the premium due date, shall render this Policy void with effect from inception.

**2.**   **CHOICE OF LAW CLAUSE**

Any dispute concerning the interpretation of this Policy shall be governed by the laws of the District of Columbia.

**3.**   **ARBITRATION CLAUSE ENDORSEMENT**

Any dispute arising out of or relating to this Policy or the breach, cancellation, termination or validity of this Policy shall be finally and fully determined in London, England under the provisions of the Arbitration Act of 1996 and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows:

Any party to the dispute may notify the others of its desire to arbitrate the matter in dispute and at the time of such notification the party desiring arbitration shall notify any other party or parties of the name of the arbitrator selected by it. Any party or parties who have been so notified shall within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party or parties notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, any of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as the third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Endorsement 3 of the Policy shall be deemed made if in writing and mailed to the last known address of the other party or parties.

The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may in said written notice or at the time of the commencement of said hearing at the option of said Board, prescribe reasonable rules and regulations governing the course and conduct of said hearing.

Miller insurance document: B0621PDIC00612 Fourth excess layer

The Board shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board fails to reach a unanimous decision, the decision of the majority of the members of the Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of serious irregularity. Without limiting the foregoing, the Parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by, any court or other body to the fullest extent permitted by applicable law, including, without limitation, application or appeal under Sections 45 and 69 of the Act.

Any order as to the costs of the arbitration shall be in the sole discretion of the Board, who may direct to whom and by whom and in what manner they shall be paid.

The Underwriters and the Assured agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Underwriters by any of the Assured's other insurers in any jurisdiction or forum other than that set forth in this Endorsement 3, the Assured will in good faith take all reasonable steps requested by the Underwriters to assist the Underwriters in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other insurers to the extent that the court or tribunal determines that the Underwriters would have been liable to such insurers for indemnity or contribution pursuant to this Policy. The Assured shall be entitled to assert claims against the Underwriters for coverage under this Policy, including, without limitation, for amounts by which the Assured reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Underwriters and the Assured pursuant to this Endorsement 3, which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Underwriters in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this Policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers (and no determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Underwriters in such arbitration, irrespective of whether or not the Underwriters remained a party to such action or proceeding).


**ALL OTHER TERMS AND CONDITIONS REMAIN UNALTERED.**

Miller insurance document: B0621PDIC00612 Fourth excess layer

**Information**

Number of lawyers used by Underwriters for premium rating hereon is 316.5

No Claims Declaration dated December 17, 2012

Miller insurance document: B0621PDIC00612 Fourth excess layer

## Security Details

### LMA3333

### (RE)INSURERS LIABILITY CLAUSE

### (Re)insurer's liability several not joint

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten. A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer. Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

### Proportion of liability

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**Order Hereon:**          100% of 100%

Miller insurance document: B0621PDIC00612 Fourth excess layer

**Schedule of Security**

| | |
|---|---|
| 100.0000% | Argo Re Ltd |
| 100.0000% | of 100.0000% Order |