E-Filed   JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, U.S. DISTRICT JUDGE** | |
|---|---|---|
| Paul Songco | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     **(In Chambers) Order Re:** Plaintiff's Motion to Remand (Dkt. 22)

      This matter is before us on Plaintiff SFA Group LLC's ("SFA") Motion to Remand ("Motion"). (Dkt. 22.)  We deemed this matter appropriate for resolution without oral argument.  L.R. 7-15.  Having considered the papers filed in support of and in opposition to the Motion, we rule as follows.

**I.     BACKGROUND**

      This is an insurance coverage action arising out of a legal malpractice action, *Manhattan Beachwear, LLC ("MBW") v. Hettrick Law, P.C., et al.*, in which Plaintiff's predecessor MBW obtained a judgment against Clyde Hettrick, a former partner at Dickstein Shapiro LLP ("Dickstein"), for $64 million.  (Dkt. 1-1, Complaint ¶ 1.)  The action was originally filed in state court.  (*Id.*)  SFA, as the assignee of MBW, commenced this action to collect the $64 million judgment against all of Dickstein's malpractice insurers, asserting contract-based claims against the insurers.  (*Id.* ¶¶ 37-52.)

      At the time of the malpractice, Dickstein maintained a professional liability insurance program consisting of a primary layer policy and four layers of excess insurance policies, for a total of $75 million as follows:

- A $15 million primary layer policy;
- A first layer excess policy with limits of $15 million;
- A second layer excess policy with limits of $20 million;
- A third layer excess policy with limits of $10 million; and
- A fourth layer excess policy with limits of $15 million.

(*Id.* ¶ 10.)  Each insurer is severally liable only for the share of risk it assumed under its policy with Dickstein.  (*Id.*, Ex. A at 17-18.)

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

The second and fourth layer excess policies have an arbitration clause providing that "[a]ny dispute arising out of or relating to this [p]olicy or the breach, cancellation, termination or validity of this [p]olicy shall be finally and fully determined in London, England, under the provisions of the Arbitration Act of 1996 . . . ." (*Id.*, Ex. A at 62, 82.)

On June 13, 2016, defendants Allied World Assurance Company, Ltd ("Allied World"), International Insurance Company of Hannover SE ("Inter Hannover"), and Liberty Mutual Insurance Europe Ltd ("Liberty") (collectively, the "Removing Defendants") removed this action to federal court. (Dkt. 1, Notice of Removal ("NOR").) Removing Defendants all subscribed to the second layer excess policy. (Dkt. 1-1 ¶ 10.) In their Notice of Removal, Removing Defendants state that removal is proper pursuant to 9 U.S.C. §205 and 28 U.S.C. §§1441(a) and 1446 because Removing Defendants' claims are "subject to written international arbitration agreements that fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the 'Convention') and, as such, are deemed to arise under the laws and treaties of the United States" or are related to such arbitration agreements. (Dkt. 1 ¶ 1.) Specifically, Removing Defendants noted that the second layer excess policy contains a written arbitration agreement that falls under the Convention. (*Id.* ¶ 15.)

On July 15, 2016, after Removing Defendants removed this action, Plaintiff filed a notice of voluntary dismissal without prejudice of all insurance carriers subscribing to the second, third, and fourth layer excess policies.[1] (Dkt. 17, Notice of Dismissal ("NOD").)

On July 25, 2016, Plaintiff filed the instant Motion arguing that remand is proper because post-dismissal, the only claims that remain are against the primary and first layer insurers ("Defendants"),[2] whose policies do not contain written arbitration provisions. (Dkt. 22, Mot.) Defendants oppose the Motion. (Dkt. 35, Opp'n.)

---

[1] This included the following insurance carriers: Removing Defendants (Liberty, Inter Hannover Ltd, and Allied World), Swiss Re International SE ("Swiss Re") (as to policy B0621PDIC01012, the second layer excess policy, only), Ironshore Specialty Insurance Company, and Argo Re Ltd. (*Id.*) Swiss Re also subscribed to the primary policy and was not dismissed in its capacity as a primary insurer. (*Id.*)

[2] Brit, Lloyd's Syndicate 623, 2623, 435, 2001, and 1458, Lexington Insurance Co., Swiss Re, and Scottsdale Insurance Co. subscribe to either the primary or first level insurance policies or to both policies. Swiss Re also subscribed to the second layer excess policy, but was dismissed in its capacity as a second level excess insurer.

Defendants argue that rulings in arbitration relating to Plaintiff's claims against Swiss Re in Swiss Re's capacity as a second layer excess insurer will impact Plaintiff's claims against Swiss Re as a primary and first layer insurer. We disagree. The policies are distinct and as discussed below, Swiss Re's policy as a second layer excess insurer will not be triggered until the claims against Swiss Re as a primary and first layer insurer are fulfilled.

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

## II. ANALYSIS

### A. Legal Standard

#### 1. Motion to Remand

We may remand a case for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A defendant can remove a case from state to federal court only if the case originally could have been filed in federal court. *Id.* § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In light of the "strong presumption against removal jurisdiction," a defendant "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotations omitted). We "strictly construe the removal statute against removal jurisdiction," *id.*, and "[w]here doubt regarding the right to removal exists, a case should be remanded to state court," *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also* 28 U.S.C. § 1447(c).

#### 2. Removal Pursuant to the Convention

Title 9 U.S.C. § 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." Title 9 U.S.C. § 205 provides that removal is proper "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." Section 205 "overrides the well-pleaded complaint rule" in that "the ground for removal . . . need not appear on the face of the complaint but may be shown in the petition for removal." *Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009) (quoting 9 U.S.C. § 205) (internal quotation marks omitted). Unlike most other bases for federal question jurisdiction, Section 205 "permits removal on the basis of a federal defense." *Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002).

While courts generally "strictly construe the removal statute against removal jurisdiction," *Gaus*, 980 F.2d at 566, "the plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 n.5 (9th Cir. 2011) (citing *Beiser*, 284 F.3d at 674). "[E]asy removal is exactly what Congress intended in § 205." *Beiser*, 284 F.3d at 674. "'[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit.'" *Infuturia Global Ltd.*, 631 F.3d at 1137-39 (quoting *Beiser*, 284 F.3d at 669). Section 205 is triggered by "'just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.'" *Id.* at 1138 (quoting *Beiser*, 284 F.3d at 669). Despite the broad removal authority under Section 205, "the removing party continues to bear the burden of establishing federal jurisdiction." *Freaner v. Valle*, 2011 WL 5596919, at *2 (S.D. Cal. Nov. 17, 2011).

#### 3. Supplemental Jurisdiction

District courts have supplemental jurisdiction over claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

III of the United States Constitution. 28 U.S.C. § 1367(a). Once supplemental jurisdiction has been established under § 1367(a), the district court can "decline to assert supplemental jurisdiction" over a pendant claim only if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

**III. Discussion**

    **A. Independent Basis of Jurisdiction Over Plaintiff's Claims Against Defendants**

The parties do not dispute that removal was proper, and that federal question jurisdiction existed over the second and fourth layer excess insurers, whose policies with Dickstein contained a London arbitration provision that allegedly falls under the Convention, prior to their dismissal pursuant to Section 203. (Mot. at 6.) However, the parties dispute whether we have an independent basis of federal jurisdiction over the claims asserted against Defendants, the primary and first layer insurers. Plaintiff claims that we do not have an independent basis of jurisdiction over these claims because there is no arbitration clause in Defendants' policies with Plaintiff.[3] Defendants counter that their status as non-

---

[3] Defendants argue that because Plaintiff does not address whether we have an independent basis of jurisdiction over Plaintiff's claims in its initial Motion, and instead only addresses supplemental jurisdiction, Plaintiff has abandoned this argument and cannot address it in its Reply. (Opp'n at 19-20.) We disagree. It is elementary that arguments related to subject matter jurisdiction cannot be abandoned and can be "raised at anytime by one of the parties, by motion or in the responsive pleadings, or *sua sponte* by the trial or reviewing court. *See, e.g. Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n.2 (9th Cir. 1988). Further, we have discretion to consider Plaintiff's response to Defendants' arguments that were raised for the first time in Defendants' Opposition. *See, e.g., United States v. Taibi*, 2012 WL 553143, at *4 (S.D. Cal. Feb. 21, 2012) (*"[B]ecause these documents respond directly to Defendant's allegations made in his opposition brief, we find [the court] may properly consider this rebuttal evidence even though it was offered for the first time in Plaintiff's reply brief.") Defendants have thoroughly briefed this issue and are not prejudiced by Plaintiff's response in its Reply. The cases Defendants cite are inapposite. In those cases, the moving parties made arguments for the first time in a reply brief that were not raised in the opposition and which the opposing party did not have an opportunity to brief. (Opp'n at 19-20 (citing *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Creative Science Systems, Inc., v. Forex Capital Markets, LLC.*, et al., No. C-04-3746, 2006 WL 305963, at *2 (N.D. Cal. Feb. 8, 2006)).

*E-Filed*   JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

signatories does not divest us of jurisdiction over their claims. Specifically, Defendants argue that we have jurisdiction over their claims because of the Court's "remarkably broad removal authority" under Section 205, which only requires that the arbitration agreements in the second and fourth layer excess insurance policies relate to or provide a defense to the Plaintiffs claims against Defendants. *Infuturia Global Ltd.*, 631 F.3d at 1137-38.

Defendants are correct that Section 205 provides federal courts "remarkably broad removal authority," which only requires a non-frivolous assertion that the arbitration agreement may "conceivably affect the outcome of the plaintiff's case." *Id.* at 1138 n.5, 1138-39. Defendants are also correct that the fact that the claims at issue are asserted against non-signatories does not, in and of itself, preclude us from finding that those claims are related to the arbitration agreement for purposes of removal under Section 205. (Opp'n at 14-15.) *See Infuturia Global Ltd.*, 631 F.3d at 1138-39. However, the removal authority under Section 205 is not "limitless." *SanDisk Corp. v. SK Hynix Inc.*, 84 F. Supp. 3d 1021, 1030 (N.D. Cal. 2015).

Here, Defendants have not established that the arbitration clause may conceivably affect the outcome of the case. There is no arbitration clause in the primary and first layer insurance policies. And the primary and first layer insurance policies do not "follow form" to the second and fourth layer excess insurance policies (the policies with the arbitration clauses) as Defendants suggest. Although the excess liability policies are "follow form," policies, this only means that the *excess policies* are "subject to the same terms, exclusions, conditions and definitions" as the *primary policy*. (*See, e.g.,* Dkt. 1-1, Ex. A at 48) (emphasis added). As Plaintiff correctly notes, "the reverse is not true." (Reply at 14.) There is no provision stating that the primary or first layer policy is subject to the terms, exclusions, conditions and definitions of the second and fourth layer excess policies.

Plaintiff's claims against Defendants do not hinge on Plaintiff's claims against the second and fourth layer excess insurers. While the liability of the second and fourth layer excess insurers depends on the liability of Defendants, Defendants' liability does not depend upon or relate to the liability of the second and fourth layer excess insurers. This is because the claims against the second and fourth layer excess insurers, will not attach, and cannot be pursued, until Defendants have paid, or committed to pay, their $30 million in limits. (Dkt. 1-1 at 60, 81) ("Liability to pay under [the second and fourth layer excess policies, respectively] shall not attach unless and until the Underwriters of the [preceding policies] shall have paid or have admitted liability or have been held liable to pay, the full amount of that indemnity inclusive of costs and expenses."). Accordingly, we need not decide the claims against the second and fourth layer excess insurers in order to determine the claims against Defendants.

Defendants cite numerous cases where courts held they had jurisdiction over non-signatories to an arbitration agreement under Section 203. However, in each of those cases, the claims against non-signatories were related to the arbitration agreements falling under the Convention. *See, e.g., Infuturia*

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

*Global Ltd.*, 631 F.3d at 1138 (quoting 9. U.S.C. § 205 ) (while jurisdiction does not hinge "on the relatedness of the *parties*," it does hinge on "the relatedness of the *subject matter* of [the] action . . . to the arbitration agreement."). In *Infuturia Glob. Ltd.*, for example, the only binding case Defendants cite on this point, [4] the Ninth Circuit held that an arbitration clause in a licensing agreement was related to a claim that a non-signatory interfered with that licensing agreement. 631 F.3d at 1135-36, 1139. Unlike the plaintiff's claims against the non-signatory in *Infuturia Glob. Ltd.*, where the non-signatory interfered with the very agreement containing the arbitration clause, *id.*, here, Plaintiff's claims against Defendants are based on policies that are separate and apart from the policies that contained arbitration clauses.

Defendants have not established that the arbitration agreement may conceivably provide them a defense to the contractual claims asserted against them. Defendants state that it is more than conceivable that "under basic contract principles of equitable estoppel, . . . the arbitration agreements will impact the disposition of [Plaintiff's] case" because the claims against Defendants are intertwined with the claims against the second and fourth layer excess insurers. (Opp'n at 11.) We disagree for the same reasons discussed above.

"Courts in the District of Columbia Circuit[5] have held that non-signatories to an arbitration agreement . . . may compel a signatory to the agreement to arbitrate a dispute pursuant to the doctrine of estoppel." *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 98 (D.D.C. 2014). "Under the doctrine of estoppel, a signatory to an arbitration agreement may be compelled to arbitrate with a non-signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Fox v. ComputerWorld Servs. Corp.*, 920 F. Supp. 2d 90, 103 (D.D.C. 2013). Similarly, under California law,[6] the doctrine of equitable estoppel applies "'when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract.'" *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir.2013)).

As discussed above, we need not decide the claims against the second and fourth layer excess insurers in order to determine the claims against Defendants. While Defendants are correct that "[t]he threshold issue under all policies is whether coverage exists under the terms" of the specific policy, the

---

[4] None of the nonbinding cases Defendants cite are persuasive.

[5] The contracts with all of the insurers contain a DC choice of law clause.

[6] Defendants reference California law in the event that California law applies. (Opp'n at 17 n.7.) We need not determine which law is applicable as we reject Defendants argument under both DC and California law that the policies are intertwined.

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

inquiry as to whether coverage exists under the primary and first layer policies is not intertwined with the inquiry as to whether coverage exists under the second and fourth layer excess policies.

Accordingly, we find that there is no independent basis of jurisdiction over Plaintiff's claims against Defendants.[7]

### B. Supplemental Jurisdiction

We have discretion under 28 U.S.C. § 1367(c) to remand supplemental claims where "the district court has dismissed all claims over which it has original jurisdiction." In considering whether to exercise that discretion, district courts consider "the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). District courts may also consider "whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case." *Id.* "'In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Acri v. Varian Associates* 114 F.3d 999, 1001 (9th Cir.1997) (*en banc*), (quoting *Carnegie–Mellon*, 484 U.S. at 350 n.7) (omission in original).

Here, Plaintiff voluntarily dismissed the second, third, and fourth layer excess insurers and as discussed above, there is no independent basis for jurisdiction over Defendants. None of the factors weigh heavily in favor of a federal or state forum. With respect to comity, because there is a DC choice of law provision, if that provision is valid, a determination we need not make here, neither this Court nor a California state court will be better suited to handle the case. However, in the event California law applies, a California state court will be better suited to handle the case.

As to judicial economy, we have not made any rulings on substantive motions and have expended only modest effort on this case. No answer has been filed and no discovery has been taken. Although there are currently two other motions pending, Defendants' Motion to Dismiss, Stay, or Transfer and Defendants' Motion to Compel Arbitration, we need not decide those motions based on our disposition of the instant Motion.

With respect to convenience and fairness, both forums are equally convenient to the parties as

---

[7] We reject Defendants' argument that the DC choice of law provision suggests that the claims against Defendants are related to the arbitration agreement. (Opp'n at 13-14.) We also reject Defendants' suggestion that the second and fourth layer excess insurers "will face a *substantial risk of multiple, inconsistent verdicts* in subsequent actions" for the same reasons discussed above. (*Id.* at 27; Dkt. 38, Notice of Errata.) The claims against the second and fourth layer excess insurers are distinct from the claims against Defendants and cannot be pursued until the claims against Defendants are fulfilled.

*E-Filed* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-04202-GHK (JC) | Date | September 29, 2016 |
|---|---|---|---|
| Title | *SFA Group, LLC v. Certain Underwriters at Lloyd's, London, et al.* | | |

they are both located in Los Angeles. Further, Defendants have not demonstrated that this Court will provide a fairer proceeding to Defendants than the state forum.

On balance, we conclude that remand is appropriate. We are not persuaded by Defendants' argument that we should deny the Motion because of Plaintiff's "tactical post-removal dismissal." (Opp'n at 11.)

### III. CONCLUSION

For the foregoing reasons, we **GRANT** Plaintiff's Motion. The action is remanded to the Los Angeles County Superior Court. The clerk shall effectuate such remand forthwith. The pending Motion to Dismiss, or in the Alternative, to Transfer the Case to the District Court for the District of Columbia, and the Motion to Compel Arbitration are denied without prejudice as moot.

**IT IS SO ORDERED.**

:

Initials of Deputy Clerk     PS